**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

FILED

NOV 2 5 2019

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Albany

| | | |
|---|---|---|
| **Plaintiff(s)** | ) | **Civil Case No.:** |
| Cynthia Marie Erno | ) | 1:19-CV-1457 |
| **vs.** | ) | **CIVIL** |
| NYS Office of Information Technology | ) | **RIGHTS** |
| | ) | **COMPLAINT** |
| **Defendant(s)** | ) | **PURSUANT TO** |
| | ) | **42 U.S.C. § 1983** |

Plaintiff(s) demand(s) a trial by:  ◯ JURY   ⦿ COURT   (Select **only** one).

Plaintiff(s) in the above-captioned action, allege(s) as follows:

### JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

### PARTIES

2. Plaintiff: Cynthia Erno (currently an ITS III (grade 23) with NYS ITS

   Address: 25 Center St.

   Ballston Spa, NY 12020

   Additional Plaintiffs may be added on a separate sheet of paper.

3. a. Defendant: NYS Office of Information Technology Services

   Official Position: NYS Agency

   Address: 201 Fuller Rd, Albany, NY 12203

b.   Defendant: _____

Official Position: _____

Address: _____

_____

_____

c.   Defendant: _____

Official Position: _____

Address: _____

_____

_____

Additional Defendants may be added on a separate sheet of paper.

4.                                   **FACTS**

Set forth the facts of your case which substantiate your claim of violation of your civil and/or Constitutional rights.  List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY
           defendant in your complaint.**  (You may use additional sheets as necessary).

_____

_____

_____

_____

_____

_____

_____

March 3rd 2017 I met with Affirmative Action administrator Jaime Benitez

Around April 19 2017 - Evan is still my supervisor and a camera at his desk is pointing at my desk. I report this to HR.

April 19th 2017 I received the following:
Dear Ms. Erno
This is in response to your complaint filed with ITS in which you alleged, among other things, that you experienced a sexual harassment, hostile environment situation in the workplace.
ITS is committed to all aspects of the principles and practices of affirmative action and equal opportunity employment, including the creation and maintenance of a positive work environment for all agency employees. I have complete the investigation regarding your complaint and have concluded that your allegations of sexual harassment, hostile environment were substantiated. Please be advise that administrative action will be taken to address the situation.
JaimeBenitez
Affirmative Action Administrator

Around April 19th 2017 Dave Mahoney, HR, calls and tries to make it sound attractive to me to be moved away from my team and be put to work just working on old DOCCS related work. I felt he was trying to silo me and I told him I wouldn't be siloed. I told him I had years of experience doing what I was doing now patching servers and I liked to keep busy. There wasn't enough Doccs work to keep me busy.

April 24th 2017 I spotted that Evan had put a quote in Klingon beneath his name in Skype. I google it and find the quote means Revenge is a dish best served cold. I took that as a clear threat from Evan and reported it to HR. They made him remove the message

May 4th 2017 Evan is reported to have been at 50 wolf road earlier than when I usually arrive and very loudly stating that he had to move to CNSE because of Cynthia and Tony(my witness). I report to HR, including questioning how Evan knew name of witness - they say they've told him not to talk about the charge against him.

Around May 18th 2017- I felt I had to tell my new boss Tracy about the charge I filed against Evan because she is constantly involving him with our work and it is making me very uncomfortable. Around this time, HR's David Mahoney calls and he states that he is trying to fire Evan and warns there will be a hearing and I will have to testify. He says it will possibly be in June, I told him I will be there. I never hear from David Mahoney again regarding the hearing.

July 14th 2017 Tony(my sexual harassment witness) goes to the PEF ITS picnic and is told repeatedly, by people that he and Evan used to work with, that Evan is going around the picnic stating that Cynthia and Tony are trying to get him fired. I ask Tony to report to David Mahoney (HR) and I believe he had witnesses call David Mahoney as well.

Jan or Feb 2018 - There is an all CTO meeting and Rajiv asks that anyone with AD experience that is willing to help the AD team out with a big project they are working on to contact Mano. They need about 10 people helping out part time, this will be in addition to our current work. I contact Mano telling him of my extensive experience with AD and he writes back expressing interest and wanting to meet with me. I tell him to name the date and time. I follow up about a week later when I still haven't heard from him and he still does not respond. Mano's email:  Good Morning Cynthia,Thank you for your  interest. Your technical background matches exactly what we are looking for. Let's chat this week, and I can go over details on what we do. Regards, Mano

PDF Pro Trial

March15th 2018 Traci, my former supervisor until my team moved to CTO unit,
skype's me and asks if I'm ok. At 50 wolf, Traci hears Evan loudly going off about
how the charges have been dropped against him because none of the
witnesses would testify.  Evan further states the witnesses were lying. I
felt like I had been punched in the stomach.  I ask Traci to
write what she heard to David. I had come in early so I stayed a little
while longer then left.  I came in for a few hours the next day but left
early after sending a note to David Mahoney myself.  I did not go in
that next Monday as well but I did attempt to call David again - I left a
second voicemail and never heard back until later. I start the process
to engage a lawyer.


March 27th 2018 David Mahoney, HR, circles back on the email I sent him on the
15th and copies Shinu Shilesh, the new Afffirmative Action rep for ITS. I reply:

David, I was very upset when it was written, however, I thought I was being clear, and
that Traci was clear, that Evan, yet again, has been loudly vocal again regarding the
sexual harassment he put me through. This is the 5th time. Clearly your just telling him to
stop has been completely ineffective.

April 3rd 2018 I met with Shinu Shilesh, the new Affirmative Action rep for ITS.
During my many phone calls with David Mahoney, HR, I was told I was being taped
and that others were listening in as well. Plus there were many written communications  between
us. When I met with Shinu, she told me no materials were provided to her on
what had been happening over the past year. I also documented the following: Shinu
told me about eoc and human rights because I told her, I was very lucky to have the
witnesses that I do have, that I think for every witness I have, there are many many
more that have not reached out to tell me what they have heard.I told her I truly
believed that the damage Evan set out to cause to my career has been thoroughly
done. Shinu sent me and Affirmative Action attachment but I did not fill out because it
specifically asks if I had retained a lawyer and at that time I had just retained a lawyer.

April 26th 2018 I sign the eeoc document the lawyer has prepared to send on my behalf.


Sometime in May or June 2018 I'm told that almost all people mentioned in that
eeoc document were sent letters by ITS legal team telling them to not speak to me or
others about the sexual harassment I went through or anything else regarding the matter.
The letter specifically said they were not to talk to the "petitioner".


June 2018 I'm told that Evan Lubin was suspended. So despite my having sent
that email to  David Mahoney in HR in March 2018, ITS finally takes action in
June 2018 after the eeoc has been contacted. I had to pay a lawyer to get them
to take me seriously on what has been happening to me for over a year.

PDF Pro Trial

They started off with stating my job duties - they got them 100% Incorrect.
Job description - At docc's, at the time we were told to become ITS,
I was the Active Directory Administrator, File Share Administrator, and
responsible for patching servers - including handling all qualys scan (Security scan)
problems discovered with the servers.  Those were my responsibilities at Docc's
for 8 years. Docc's had their own personal Footprints system that we all used for
change controls and other tickets prior to merging with ITS - I did not manage it.
Those duties continued until I moved to 50 wolf for ITS(about a year I think after ITS
made all IT join them). Almost all duties at ITS for me revolved around server
patching,Server trouble shooting, and remediation as it pertained to patching them.
(Addressing problems that prevented them from being patched before and after a
patch window). When it was told to us that we had to switch over to SCCM for
patching, I took the lead on documenting all domains, working with anyone familiar
with those domains to establish patching times and access to install the agent and
for trouble-shooting the servers as needed. I personally added over 6,000 sccm
clients to servers and set up their patch times in sccm and in ITSM (not footprints)
ticketing system.  All has been documented by me. At one point I did have to take
over the FTP system for docc's even though I had never personally worked on
that system for docc's previously. This was due to a contractor whose contract

was delayed from  being approved. His FTP system was very extensive and I had
to learn his programming and maintain and respond to docc's business unit for any
problems or new requests they had with that system. Even during that few months time,
I did not work with Footprints tickets.
It actually says a lot to me that they couldn't even get my job duties right.
After all, I'm just an irritating cog in their system - certainly not a person that had
to suffer because they thought so little about making sure I was protected.
They left out specific instances of all that occurred. ITS also falsely stated that
I made repeated communications regarding Evan Lubin's sexual harassment and
that they were not addressed. No, I made repeated communications regarding
Evan Lubin's retaliation and obviously they were not sufficiently addressed because
they kept occuring over and over and over. They stated that I had asked for an
alternate work location so they twisted my asking for Evan to be removed as my
supervisor and my location to suit their needs to argue that they were protecting me.
As another example of twisting the facts to suit them, they act as if I alone sent an
email as a third party to what happened at the picnic.  They fail to acknowledge that
Tony Manupella sent them his first hand account of what happened at the picnic
he attended. And the second reference they deem to acknowledge purposely leaves
out how Evan was bragging that the witnessess were liars and that none of the
witnessess were willing, as he stated it, to come forward so the case against him
was  dropped.  Do they not think that this behavior in front of my co-workers was
not harmful to me?  They may have been in another location but these were people
I had to work with everyday.  Is it so hard to believe that most of the witnessess at 50
Wolf were hesitant to tell all of what they heard from Evan based on his retaliation towards me?

They then finish it up by trashing one of my witnesses, my former manager,
Traci Scalzo because of what?  The fact that she included a link to MEtoo at the
end of her email to David Mahoney in March of 2017?  (Btw, my complaint preceded
the #metoo movement.) There was no  reason to discount what Traci was hearing,
in fact, they even give some merit to what was said in their own rebuttal. Also,I was
not the only one that saw the message on Lubin's skype as a threat.  Tony Manupella,
my main witness, also very much saw it as a threat and he emailed HR about that
as well. They also addressed the Temp work assignment. I don't care who you
put that in front of, the way that was ignored after initially showing interest in me
along with the environment that was allowed to fester because the slaps on the
hand to Evan over and over were clearly not enough to shut him up - show that the
effects were rippling outward. They stated I was inexperienced, I had 8 years of AD experience at Docc's.
And others were given the temp positions as was stated at the next CTO meeting.

December 13th 2018 I receive the following from my lawyer, David Fallon:
I received a response from the Agency's attorney this afternoon and she stated
that our settlement offer was rejected as they do not have any settlement authority
at this time.  I do not believe that this is a reasonable settlement position for ITS.
Based upon the facts of the case, I believe we should have received some counter.
I asked David Fallon if the EEOC mediator had any suggestions as to who he should be
communicating with for negotiations since ITS claimed they had no authority to
negotiate. He replied: I have looked into this issue further and I can't ask the mediator
to convey the offer to someone else or otherwise circumvent their attorney.  The
ethical rules prohibit me from utilizing a third-party to accomplish what I would be
prohibited from doing on my own. We hear that Evan Lubin has a hearing to try to get
his job back in February. I report to my lawyer: I was told that there was talk of Evan
at the PEF/ITS christmas party and that people were aware of Evan's hearing
in February.  There isn't enough hearsay to report other than it was being talked
about but it says enough that Evan is still talking to my peers.

February 5th 2019 I hear that Evan's hearing is on February 8th. Traci Scalzo
is very upset that she seems to be the only witness. Traci was upset that
Tom Laney and Sean Paterek, Evan's and Traci's managers, weren't called as well.
She said they should have been called to speak to how they thought Evan was
creating a hostile environment just because he wouldn't shut about me and the
situation. Tom Laney and Sean Patarek are Traci's managers as well and she knows
first hand all that they heard along with herself.

February 12th 2019 I let my lawyer know what I was told by Traci Scalzo:
I don't know what the outcome is yet.
Traci said she was the only one called to testify.
She said she asked why Tom Laney (Evan's boss) wasn't
called because of the times he had talked to Evan about his calling me a liar
and thus retaliating against me and she was told by Lauren that Tom said he did
not write down the days and times he talked to Evan. I believe she even brought
up Sean Paterek and how he was sincerely worried that Evan was creating a
hostile work environment with his retaliation.
And Traci said that she had to convey how she felt I felt during that
period when Traci was first taking over the role of being my manager.
Lauren said that from the statement of Tom Laney and statements made from
others, that she did not think anyone but Traci would make a good witness.
Traci said she had provided Shinu Shilesh (the affirmative action rep), months before,
 a recording with Evan trashing me.  Lauren  (the lawyer handling this for ITS)
claimed she had never received it.

So she provided it to Lauren but warned she would have to us
 it well. Lauren, at their meeting directly before the hearing, said she couldn't hear
anything and Traci reminded her she should use head phones.
I would tell Traci when we would talk that I thought she was brave and she would
 say no she was not. After this experience, she realizes how cowardly most are being
 and she expressed concern about what her work experience will be now.. especially
if Evan is allowed back. Evan is asking for back pay for the time he has been
suspended as well as his job back. Traci thinks since she was the only witness
 that he will get it back. Evan is also denying ever talking about the situation
which surprised Traci because Evan always defended his constantly talking about
 it by saying that his lawyer said it was perfectly ok for him to call me a liar
 and talk about whatever he wanted.
  February 13th 2019 I send the following to my lawyer David Fallone: Evan starts back
 to work tomorrow.  Something else Traci said that happened before the hearing - they moved
Evan's stuff to another desk away from her desk .. as if they knew.

There is a guy at work, Mike Argus, whom I share a lot of childhood
friends with, that I walk with during my half hour lunch. Recently,
another man (Ray Collado) was moved closer to where Mike sits and Mike
mentioned he was going on a walk with me and he was told by this other
man that he should be careful around me because Cynthia calls out sexual
harassment. Later, when we went on our walk, I told Mike that Evan
Lubin had sexually harassed me and that he had been found guilty, but
the retaliation, the poison that Evan has spread, has clearly been
effective for a lot of people. I also told him that I was telling my lawyer about
what he told me and he said he was fine with that.

Traci Scalzo also told me about another encounter she had with Evan.
Evan called her over to his desk and showed her a 'screenshot' showing that
Dave Mahoney (the guy I was directed to tell all incidents to in HR) had sent an
email stating that Evan was allowed to talk with whomever he wanted about
whatever he wanted. She does not know if it was real because it was a
screen shot. Evan then went on to tell Traci to not feel bad about testifying
because she could not have known that David Mahoney had told him this.
She told him she did not feel bad at all because all she told was the truth
and then informed him this was the last time she would talk about this
subject with him and thinks her anger gave him a clear message to not broach
the subject with her again.

PDF Pro Trial

5.                           **CAUSES OF ACTION**

**Note: You must clearly state each cause of action you assert in this lawsuit.**

### FIRST CAUSE OF ACTION

My above detailed timeline of all that has

occurred to me in retaliation by Evan Lubin, after he was found

guilty of sexual harassment and creating a hostile work environment, clearly shows that NYS ITS not only did not

effectively stop the retaliation, they also gave in writing,

permission to Evan Lubin to say anything he wanted whenever he wanted.

### SECOND CAUSE OF ACTION

As a result, I was repeatedly called a liar

by Evan Lubin to my co-workers for over a year.

NYS ITS failed to protecte me effectively from this retaliation.

HOSTILE WORK ENVIRONMENT

### THIRD CAUSE OF ACTION

6. **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief:

All lawyer costs be recovered. (around $6,000.00)

$75,000.00 for pain and suffering.

I would like an apology sent to all staff at NYS ITS.  Recently Cynthia Erno was subjected to sexual harassment and a hostile work environment. As a result, she was then subjected to retaliation from her harasser for over a year.  NYS ITS would like to apologize for not protecting her better.  Please know, in the future, we will strive to do a much better job to protect those like Cynthia Erno from any such humiliation, stress, and grief.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:

Signature of Plaintiff(s)
(all Plaintiffs must sign)

02/2010



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

Olympic Towers
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 431-5007
FAX (716) 551-4387

Cynthia Erno
c/o Tully Rinckey, PLLC
441 New Karner Road
Albany, NY 12205

Re:     EEOC Charge No.: 525-2018-00888
        Cynthia Erno v. NYS OIT Services

Dear Ms. Erno:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information and evidence submitted. You allege that you were sexually harassed, harassed, and subjected to different terms and conditions of employment because of your sex/female and in retaliation for making a complaint of employment discrimination.

However, the Respondent moved and disciplined the alleged harasser following your complaints. There is no evidence that you were subjected to different terms and conditions of employment.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice, or by contacting the New York State Division of Human Rights. Otherwise, your right to sue will be lost. Please contact Investigator Jeremy Boyd at (716) 431-5011 if you have any questions.

Sincerely,

for

John E. Thompson, Jr.
Director
Buffalo Local Office

Date:   AUG 2 8 2019

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Cynthia Erno<br>C/O Tully Rinckey PLLC<br>441 New Karner Road<br>Albany, NY 12205 | From: | Buffalo Local Office<br>300 Pearl Street<br>Suite 450<br>Buffalo, NY 14202 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **525-2018-00888** | **Jeremy M. Boyd,**<br>**Investigator** | **(716) 431-5011** |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*John E. Thompson*                              AUG **2 8** 2019

**John E. Thompson,**                              *(Date Mailed)*
**Local Office Director**

Enclosures(s)

cc:
**Lauren A. Holupko**
**Senior Attorney**
**NYS OFFICE OF IT SERVICES**
**ESP, Swan Street Building Core 4, Floor 3**
**Albany, NY 12220**

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Cynthia Erno,

Complainant,

New York State Office of
Information Technology Services,

Respondent.

VERIFIED
CHARGE

Cynthia Erno, through her undersigned attorney, David A. Fallon, Esq. of Tully Rinckey PLLC, hereby appears and complains as against Respondent as follows:

1.      At all times relevant herein, Complainant Cynthia Erno (hereinafter "Erno" or "Complainant") was a resident of Ballston Spa, New York in Saratoga County.

2.      At all relevant times herein, Respondent New York State Office of Information Technology Services, (hereinafter "ITS" or "Respondent") is an Agency of the State of New York tasked with providing "centralized IT services to the State and its governmental entities[.]" *See* *https://its.ny.gov/about-its*, accessed April 5, 2018.

3.      At all relevant times herein, Erno worked at ITS.

4.      At all relevant times herein, ITS employed more than fifteen (15) persons.

NATURE OF THE CASE

5.      This is a charge for damages and equitable relief based upon complaints pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 *et seq.* (amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), and the New York State Human Rights Law ("NYSHRL"), as codified, N.Y. Exec. Law §§ 296 *et seq.*, and seeks damages and equitable relief to redress the injuries she suffered as a result of

being discriminated against on the basis of her sex, subjected to hostile work environment, and retaliated against by her employer.

## RELEVANT BACKGROUND & FACTS

6.      Erno has worked for ITS and its predecessor agency through the present.

7.      Erno is currently employed as an Information Technology Specialist III, Grade 23, in ITS' Office of the Chief Technology Officer (CTO), Information Technology Service Management (ITSM) Program, Windows Server Patching Group.

8.      Erno is biologically female and it is apparent from visual observation of Erno that she is female.

9.      At all relevant times herein, Erno's supervisors and colleagues were aware that she is a female.

10.     Based upon Erno's observation, approximately ninety percent (90%) of the employees within ITS are male, and approximately ninety-five (95%) of the supervisors are male.

11.     Erno's former direct supervisor was Evan Lubin ("Lubin"), who worked in the same office as Erno. During this time period his job title was Information Technology Specialist IV, Grade 25.

12.     Lubin is a male.

13.     During the time when Lubin worked in the same office as Erno, he would frequently make sexually explicit jokes and comments.

14.     On one occasion, Lubin publicly discussed his spouse's ability to "give good head," referring to oral sex.  Erno responded that this comment was unwelcome and offensive, stating, "how can you talk about your wife like that?  That's disgusting."  This comment was

made in front of both Lubin's immediate supervisor, Michael Cahill ("Cahill"), Grade 29, as well as Ms. Erno.  No preventative or corrective measures were taken.

15.    On no less than ten (10) occasions, Lubin told an offensive joke wherein a woman was told that that she should show her breasts if she wanted to "get ahead" in the world, or words to that effect. While these comments were sometimes made in front of many subordinates, on other occasions it was made directly to Erno.

16.    Given Lubin's status as Erno's supervisor and the number of times that Lubin told this joke/story, Erno reasonably believed that Lubin was implying that if Erno showed Lubin her breasts, Lubin would see to it that Erno would advance professionally within the office.

17.    On or about February 23, 2017, Erno's second line supervisor, Thomas Laney ("Laney"), acting supervisor of Windows Server Group, then a Grade 27, observed that Erno appeared uneasy around Lubin.

18.    Erno detailed to Laney Lubin's egregious and sexually harassing behavior, and further set forth that no corrective or preventative measures had been taken, despite many of the comments being made in front of Lubin's supervisors.  Erno expressed concerns about escalating her complaint further because ITS is a male-dominated workplace and she feared retaliation if the matter were escalated. Erno left work early that day because she had become so upset that she cried repeatedly, which severely irritated an eye condition.

19.    On or about February 24, 2017, Erno again talked again with Sean Patarek ("Patarek"), Grade 25, and Laney regarding Lubin.  She stated that despite her reservations concerning retaliation, she wanted to press forward so that other women were not forced to work in such sexually harassing and hostile workplace.

20.    On February 27, 2017 Erno submitted a statement to Patarek and Laney regarding the sexual harassment, and they directed Erno to submit the statement to Human Resources (HR), which she proceeded to do.  An investigation followed.

21.     On April 19, 2017, Affirmative Action Administrative Jaime Benitz ("Benitez") emailed Erno the results of the investigation.  The email provided, in pertinent part, "[t]his is in response to your complaint filed with ITS in which you alleged, among other things, that you experienced a sexual harassment, hostile environment situation in the workplace . . . I have complete[d] the investigation regarding your complaint and have concluded that your allegations of sexual harassment, hostile environment were substantiated.  Please be advise[d] that administrive action will be taken to address the situation. *See* Exhibit 1, email from Benitez to Erno (Apr. 19, 2017).

22.     No preventative or corrective measures were taken during the course of the investigation and Lubin remained Erno's first-line supervisor during this time period, stationed directly next to Erno's desk.

23.     During the period of investigation and for some time thereafter, Lubin maintained a camera on his desk connected to his computer, which, upon information and belief, recorded and saved video to his computer.  This camera remained focused on Erno's workstation.

24.     Shortly after the investigation concluded, Human Resources employee Dave Mahoney ("Mahoney"), called Erno and encouraged her to accept a position away from her team, and move to a less desirable assignment focusing on old Department of Corrections and Community Supervision (DOCCS) related work. This was a transparent attempt to isolate and silo Erno.  Following Erno's refusal, Lubin was ultimately moved to the College of Nanoscale Science and Engineering (CNSE) on the State University of New York (SUNY) campus in May of 2017.

25.     On or about April 24, 2017, Lubin began displaying a quote beneath his name in Skype. The quote appeared to be a variation of the saying "Revenge is a dish best served cold" in the Klingon language.  Erno reported this to HR.

26.     On May 4, 2017, Lubin arrived at fifty (50) Wolf Road and very loudly stated that he was being forced to move to CNSE because of Erno. Erno again reported this to HR. No appropriate preventative or corrective measures were taken.

4

27.     Despite the substantiated sexual harassment complaint, ITS continued to force Erno to work with Lubin.  Indeed, the two were forced to work together frequently even after Lubin moved to CNSE.  Accordingly, on or about May 18, 2017, Erno advised her new supervisor, Traci Scalzo ("Scalzo"), Grade 25, about the substantiated complaint Erno had made against Lubin. Up until this time Scalzo had frequently involved Lubin on projects worked on by Erno, which caused Erno severe emotional distress and discomfort.

28.     On July 14, 2017, the union representing ITS employees (PEF) held a picnic.  Lubin was in attendance at this picnic and, upon information and belief, complained to many of the attendees that Erno and another employee had lodged a false complaint against Lubin and were attempting to get him fired.  Lubin was referring to the substantiated sexual harassment complaint made by Erno.

29.     In the weeks and months following the picnic, Erno began to find that colleagues who had previously responded to her work requests regularly, were ignoring Erno.  Erno reported this to HR.

30.     In October 2017, Erno's work team became part of the office of the New York State Chief Technology Office (CTO) and was moved to CNSE "zen building" on the SUNY campus.  Lubin was moved back to fifty (50) Wolf Road in connection with this reorganization.

31.     Continuing through January 2018, Erno continued to be ostracized by her peers and colleagues.  It is clear that she is being retaliated against, and the fears she vocalized to her supervisors and HR when she reported the harassment have fully materialized.  This retaliatory environment is facilitated by Lubin individually, but also ITS through its lack of any disciplinary action against Lubin, and ITS permitting Lubin to publicly call Erno a liar

32.     On or about January 16, 2018, during a regular CTO meeting, Rajiv Rao, Chief Technology Officer, asked the team whether anyone with Active Directory (AD) experience was willing to assist with a high profile project.  He stated that if anyone with the relevant experience is willing to assist, such individual should contact Manohar Mathan ("Mathan"), Grade 25.

33.     As this was a high profile opportunity, which could have led to significant career advancement, Erno promptly contacted Mathan via email and detailed her extensive experience with AD.

Mathan wrote back and stated, in pertinent part, "[y]our technical background matches exactly what we are looking for. Let's chat this week and I can go over details on what we do." While Erno responded two (2) minutes later that she could meet at Mathan's convenience, Mathan never responded further and broke off any further communications with Erno. Erno followed up one (1) week later, but again received no response.

34.     On March 15, 2018, Lubin announced to the employees at ITS' 50 Wolf Road location that he had been "vindicated" and "the charges have been dropped." Lubin further stated that all of the "witnesses," referring to Erno, were "lying" and that they "didn't want to carry on with their lies." *See* Exhibit 3, p. 4 of 5. Erno was advised of this information by her former supervisor, Scalzo, who also reported this to Mahoney via email. *Id.* Erno immediately began to experience extreme distress and felt like she had been punched in the stomach. Erno immediately emailed Mahoney, and again complained of ongoing retaliation and sexual harassment, stating that she continued to be "re-victimized over and over again by [Lubin]." *Id.*

35.     Mahoney responded that day and stated, "Thank you for your email. Please give me a call to discuss this further. I believe there are a host of issues that need to be clarified." *See* Exhibit 3, p. 3 of 5. Erno called Mahoney, but did not receive a return call. On March 16, 2018, Erno was forced to leave work due to the physical sickness and emotional distress she was experiencing. Erno was also unable to work the next workday, Monday, March 19, 2018.

36.     On March 27, 2018, after finally receiving a follow-up email from Mahoney (she never received a return call), Erno reiterated that Lubin "yet again, has been loudly vocal again regarding the sexual harassment he put me through. This is the 5th time. Clearly your just telling him to stop has been completely ineffective." *See id.*, p. 2 of 5. Again, ITS took no appropriate preventative or corrective measures.

## AS AND FOR A FIRST CHARGE

### *Sex Discrimination under Title VII*

37.     Erno realleges and incorporates the allegations of Paragraphs 1 through 36 of this Verified Charge as if set forth fully herein.

38.     Pursuant to Title VII, it is unlawful "for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

39.     Erno is female.

40.     Erno has been a good and dutiful employee of New York State since 2006.

41.     Erno is qualified for the position she holds.

42.     Erno has been subjected to repeated sexual harassment as set forth above.

43.     Nevertheless, when Erno tried to make the harassment stop she was denied opportunities for career advancement, isolated, ignored, and subjected to a further hostile work environment.

44.     The denial of the detail opportunity with Mathan qualifies as an adverse employment action.

45.     Upon information and belief, male employees were not treated in this fashion by ITS and its managers.

46.     ITS, acting through their responsible management officials, demonstrated animus toward Erno based on her sex. Accordingly, the aforementioned conduct against Erno occurred under circumstances that give rise to an inference of discrimination due to Erno's sex, and the inherently sexual and sexually harassing nature of the conduct described hereinabove.

47.     For all the foregoing reasons, the Respondent have engaged in the unlawful employment practice of sex discrimination against Erno in violation of Title VII.

### AS AND FOR A SECOND CHARGE

*Retaliation under Title VII*

48.    Erno realleges and incorporates the allegations of Paragraphs 1 through 47 of this Verified Charge as if set forth fully herein.

49.    Pursuant to Title VII, it is unlawful to retaliate against an individual for making or supporting a charge of discrimination. *See* 42 U.S.C § 2000e-3(a).

50.    Respondent engaged in a continuing pattern and practice of retaliation against Erno in violation of Title VII and failed to take any remedial action with respect to Erno's complaints to management officials, human resources, and others, regarding unlawful sex-based discrimination and harassment.

51.    At various times during her employment, Erno complained, in good faith, to management about discrimination and unlawful conduct in the workplace. By protesting the discrimination and unlawful conduct, which Erno reasonably believed to be discriminatory, Erno engaged in protected activity under Title VII.

52.    As a result of Erno's protected activity, ITS took materially adverse actions against Erno.

53.    Respondent's aforementioned actions toward Erno are materially adverse employment actions because a reasonable employee of ordinary firmness would have been dissuaded from making a complaint of discrimination based upon the retaliatory acts alleged within this Charge.  As a reasonable worker would have been dissuaded from making or supporting a charge of discrimination if subjected to the actions herein, the actions alleged herein are materially adverse.

54.    The aforementioned adverse employment actions and the incidents identified in this Verified Charge demonstrate that Respondent were motivated by retaliatory animus toward

Erno and that there is a causal connection between the adverse employment actions and Erno's protected activity.

55.     For all the foregoing reasons, Respondent have engaged in the unlawful employment practice of retaliation against Erno in violation of Title VII.

## AS AND FOR A THIRD CHARGE

### *Hostile Work Environment under Title VII*

56.     Erno realleges and incorporates the allegations of Paragraphs 1 through 55 of this Verified Charge as if set forth fully herein.

57.     Pursuant to Title VII, it is unlawful to subject to a person to a hostile work environment on the basis of his or her sex. *See* 42 U.S.C. § 2000e-2(a)(1).

58.     Respondent engaged in a continuing pattern and practice of discrimination and retaliation in violation of Title VII by subjecting Erno to a hostile work environment, as described above, on the basis of her sex and failing to take any remedial action with respect to Erno's complaints to Respondent regarding unlawful discrimination and sexual harassment.

59.     Erno was harassed, bullied, belittled, and insulted by Respondent's management and employees, including explicit references to Erno and referring to her as a "liar" on numerous occasions despite the fact that her complaint of sexual harassment was substantiated.

60.     Respondent have failed to correct the hostile work environment and have let it persist.

61.     For all the foregoing reasons, Respondent have engaged in the unlawful employment practice of subjecting Erno to a hostile work environment in violation of Title VII.

## AS AND FOR A FOURTH CHARGE

### *Discrimination under NYSHRL*

62.     Erno realleges and incorporates the allegations of Paragraphs 1 through 61 of this Verified Charge as if set forth fully herein.

63.     Respondent engaged in a continuing pattern and practice of illegal discrimination in violation of the NYSHRL by discriminating against Erno on the basis of her sex and failing to take any remedial steps whatsoever with regard to Erno's complaints regarding the unlawful discrimination.

64.     Erno was subjected to harassment and a hostile work environment.

65.     Respondent failed to end the unlawful discrimination after Erno complained.

66.     As a result, Erno was discriminated against and subjected to a hostile work environment due to her sex. The hostile work environment was severe and/or pervasive to alter the conditions of Erno's employment.

67.     Erno was treated different than similarly situated Respondent' employees due to her sex, and the nature of the harassment was such that it was harassment of a sexual nature on its face.

68.     As a result of Respondent' discrimination in violation of the NYSHRL, Erno has been damaged in an amount to be determined by a jury at the time of trial.

## AS AND FOR A FIFTH CHARGE

### *Retaliation under NYSHRL*

69.     Erno realleges and incorporates the allegations of Paragraphs 1 through 66 of this Verified Charge as if set forth fully herein.

70.     Erno engaged in protected activity under the NYSHRL when he protested the harassment in the workplace and reported same to management.

71.     As a result of Erno's protected activity, Respondent took materially adverse employment actions against Erno.

72.     Respondent' actions as forth herein were materially adverse employment actions because they might well dissuade a reasonable worker form making or supporting a charge of discrimination and were changes in working conditions that were disruptive than mere inconvenience or an alteration of job responsibilities.

73.     The adverse employment actions by Respondent demonstrate that Respondent were motivated by retaliatory animus toward Erno and that there is a casual connection between the adverse employment actions and Erno's protected activity.

## **PRAYER FOR RELIEF**

WHEREFORE, Complainant Erno demands judgment against Respondent as follows:

A.     An award of compensatory damages, appropriate interest, punitive damages, exemplary damages, reasonable attorneys' fees, expert witness fees, and other litigation expenses;

B.     An award of Complainant Erno's costs and disbursements; and

C.     Granting any further relief as this Court finds necessary and proper.

DATED:   Albany, New York
         April 23, 2018

By: _____
     David Fallon, Esq.
     Senior Associate
     Tully Rinckey PLLC
     441 New Karner Road
     Albany, NY 12205
     518-218-7100
     dfallon@fedattorney.com

11

## VERIFICATION

Cynthia Erno, an individual residing in the State of New York hereby states as follows:

Deponent has read the foregoing *Verified EEOC Charge* and hereby verifies that based upon her personal knowledge the facts recited therein are truthful and accurate.

Dated: April ___, 2018

_____
Cynthia Erno

STATE OF NEW YORK          )
                                              ss.:
COUNTY OF                        )

On the ____ day of April in the year 2018, before me, the undersigned, Cynthia Erno, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by her signature on the instrument, the individual, executed the instrument.

_____
NOTARY PUBLIC

12

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov> |
| **Sent:** | Monday, August 14, 2017 4:31 PM |
| **To:** | Mahoney, David (ITS) |
| **Subject:** | update requested |

David,

Recently Tony M. told me when he was at the picnic that a former co-worker of his asked him why Evan was telling everyone that would listen that Tony and Cynthia are trying
to get him fired.
I have a tendency to be a turtle sometimes. Just keep my head down and work hard despite what others may be up to. However, I would be angry at myself for not stating outright
that this can not be allowed to continue. I will not just set back and continually let him trash my career – which is exactly what he is doing by mouthing off about the sexual harassment
complaint in this male dominated agency.
Please give me any updates you have on what is going on with this?

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd., Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN ← Windows Server group ITSM

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov> |
| **Sent:** | Friday, June 2, 2017 11:22 AM |
| **To:** | Mahoney, David (ITS) |
| **Subject:** | more as requested. |

Beginning of January or mid-January is one of the last meetings(if not the last meeting) we had with Mike Cahill before he left for another area of ITS.

At the beginning of that meeting, as I was sitting down, Evan was talking to Cahill and others.

I don't know what preceded it or anything.

I heard him say his wife doesn't give him head but she may do for others .. he didn't know.

I immediately said that was disgusting and how can he talk about his wife that way. I said if my husband talked about me that way I would be horrified.

He said his wife was aware of how she talked about him and she was fine with it.

He would talk about his wife's breasts quite often. Comments like they were so huge she had special bras made for her by some tailor shop.

There is more but I can't do this all at once.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd., Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN ← Windows Server group ITSM

1

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov> |
| **Sent:** | Monday, April 24, 2017 5:06 PM |
| **To:** | cynmarie@nycap.rr.com |
| **Subject:** | FW: a few things |

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

**From:** Erno, Cynthia M (ITS)
**Sent:** Monday, April 24, 2017 5:05 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** a few things

David,

1st – he's still listed as my supervisor in Lats.
2nd – he's still responding to people who email us on our group email its.dl.dch.windows.patching.
And the reason I'm not giving you more time to resolve the first two is what I just spotted.
I don't usually go in skype because I have so many windows open that it is too much on this simple workstation I was given.
I had to today for a project manager that needed something.. so I spotted this:



Lubin, Evan (ITS) - Offline 3 hours
choH bIr jablu'DI', reH QaQqu' nay'

So I googled and found that this is what always comes up:
**Revenge is a dish which is best served cold.**
http://www.klingon.org/smboard/index.php?topic=141.0  - one link of many stating this phrase is the most common Klingon use of this saying.

But I noticed he uses Choh instead of bortaS.
However, I assume it's a clever way to deny what he is putting out there because I can't specifically find why to use choh instead of bortaS.
I did find that choh means "change of state".
So change of state is a dish which is best served cold.
Sure, nobody gets that threat (facetious of course). Especially since if anyone googles, the most common "message" reached is the one about revenge.

Cynthia Erno
Data Center Hosting, Windows Unit

1

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov> |
| **Sent:** | Thursday, May 4, 2017 2:32 PM |
| **To:** | cynmarie@nycap.rr.com |
| **Subject:** | FW: Patching Schedule |

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, May 04, 2017 12:14 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** RE: Patching Schedule

Charles Slyer.
I hate that so many have to be involved.
Anyway, he approached me and told me about this morning.
I'm sure he's at lunch right now.
Also, I have friends at CNSE.. I'm sure they won't hesitate to approach me if Evan runs his mouth over there too.

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

**From:** Mahoney, David (ITS)
**Sent:** Thursday, May 04, 2017 12:11 PM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** RE: Patching Schedule

518-473-1891.  Who is the employee that I can expect to contact my Office?

I'd like one of my folks to be able to field the call if I am unavailable.

Thanks,
DM

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, May 04, 2017 12:10 PM

1

**To:** Mahoney, David (ITS); Laney, Thomas (ITS)
**Subject:** RE: Patching Schedule

David,
What's your phone number again?

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

---

**From:** Mahoney, David (ITS)
**Sent:** Thursday, May 04, 2017 11:55 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** RE: Patching Schedule

Thank you for letting us know.  Please have the individual referenced below call me so that I can speak with them directly about their account of this interaction.

Thanks,
DM

---

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, May 04, 2017 11:12 AM
**To:** Mahoney, David (ITS); Laney, Thomas (ITS)
**Subject:** FW: Patching Schedule

Someone saw Evan earlier today here at 50 Wolf and asked how he was doing.
Evan said it sucks.. said he was made to move to CNSE because of Cynthia and Tony.
Who knows how many others he has said that to or even heard him today saying that?
How does he even know about Tony?

Another way to retaliate is to be mouthy about what happened but spin it in a way that makes everyone else guilty.
This is how he operates and somehow, some way, he needs to take responsibility for all that he did and move on.  I won't sit back and allow him to make me a villain for his actions.

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

---

**From:** Erno, Cynthia M (ITS)
**Sent:** Tuesday, May 02, 2017 1:26 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** RE: Patching Schedule

Hello David,
I've been playing catch up on emails and checking on servers since I got in this morning.
Would there be a good time for me to call today?

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN      ←   Windows Server group ITSM

---

**From:** Mahoney, David (ITS)
**Sent:** Friday, April 28, 2017 11:20 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** RE: Patching Schedule

Good Morning Cynthia,

I have spoken with Tom about your expressed concerns and Evan's transition to a new assignment.

Please give me a call to discuss your email below.

Thanks,
DM

---

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, April 27, 2017 10:41 AM
**To:** Mahoney, David (ITS); Laney, Thomas (ITS)
**Subject:** FW: Patching Schedule

Is it really hard to grasp how disrespectful it is to what I had to endure that his continued involvement, when he's been asked to step aside, makes me feel extremely uncomfortable?
There has not been one thing that he has responded that needed his particular involvement.

Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN      ←   Windows Server group ITSM

---

**From:** Lubin, Evan (ITS)
**Sent:** Wednesday, April 26, 2017 1:49 PM
**To:** Flagler, Sandi (ITS) <Sandi.Flagler@its.ny.gov>; its.dl.dch.windows.patching
<its.dl.dch.windows.patching@its.ny.gov>
**Subject:** RE: Patching Schedule

That schedule is correct Sandi, with the exception of the Production cleanup run, which we no longer do.
The ITSM patch groups for Legacy implied that those servers were patched by the HEAT product which although
budgeted, was not purchased.  Therefore the licenses expired and we are only using SCMM now.

3

The patch groups are duplicated in SCCM, and will eventually be condensed.  But the patching windows remain the same.

Thank you,
**Evan Lubin**
DCH Windows Technical Change Manager
Information Technology Specialist 4
Office of Information Technology Services
50 Wolf Rd., Colonie NY 12232
Contacts | Evan.Lubin@ITS.ny.gov
www.its.ny.gov

---

**From:** Flagler, Sandi (ITS)
**Sent:** Wednesday, April 26, 2017 1:43 PM
**To:** its.dl.dch.windows.patching <its.dl.dch.windows.patching@its.ny.gov>
**Subject:** Patching Schedule

Below is the latest schedule I have for the DCH Patching Schedule.

Will someone please update this schedule?  I am trying to determine when some DCJS servers are being patched, and I see that some of these servers are in Patch Groups that are not in the below schedule.  For example, there are groups in the Server Records called "2 Test" and others called "2 Test Legacy."  I'm not sure if the patching on these servers are done at the same time or at different times.

Thanks.

| Group/Function | Time | Relative Maintenance Window/Date |
|---|---|---|
| Patch Tuesday | | Second Tuesday of the Month |
| 1Test | | LAB servers only<br>1st Wednesday after Patch Tuesday (day after Patch Tuesday) |
| 2Test | 4:00 a.m. - 7:00 a.m. | DEV and TEST servers<br>1St Friday after Patch Tuesday |
| 3Staging | 4:00 a.m. - 7:00 a.m. | Staging/Pseudo, some Prod<br>2nd Wednesday after Patch Tuesday |
| Cleanup (lower) | 4:00 a.m. - 7:00 a.m. | Cleanup for 2TEST and 3STAGING<br>2nd Friday after Patch Tuesday |
| 4Prod 7PM | 7:00 p.m. - 9:00 p.m. | 2nd Tuesday after Patch Tuesday |
| 4Prod | 4:00 a.m. - 7:00 a.m. | Less critical PROD servers, plus<br>3rd Wednesday after Patch Tuesday |
| 5Prod 7PM | 7:00 p.m. - 9:00 p.m. | 3rd Thursday after Patch Tuesday |
| 5Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers<br>3rd Friday after Patch Tuesday |

| 6Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers<br>4th Wednesday after Patch Tuesday |
| 7Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers<br>4th Wednesday after Patch Tuesday |
| Cleanup (all) | | 5th Wednesday after Patch Tuesday |

**Sandi Flagler**
Manager, Data Center Hosting – Windows Server Build/Troubleshooting

**Office of Information Technology Services**
50 Wolf Road, 3rd Floor, Albany, NY  12205
w. (518) 457-8195 | h. (518) 464-9724 | c. (518) 859-0819 | Sandi.Flagler@its.ny.gov
www.its.ny.gov

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov> |
| **Sent:** | Thursday, March 15, 2018 2:01 PM |
| **To:** | cynmarie@nycap.rr.com |
| **Subject:** | FW: |

**Flag Status:**      Flagged

Thank You,

# Anthony Manupella
**Information Technology Specialist III**
NYS Platforms netForge Cloud Operations
**Office of Information Technology Services**
Building 8, 3rd Fl, Rm 331 #140
W A Harriman Campus
Albany NY 12227

(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

---

**From:** Mahoney, David (ITS)
**Sent:** Tuesday, August 15, 2017 2:27 PM
**To:** Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov>
**Cc:** Funchion, Andrea (ITS) <Andrea.Funchion@its.ny.gov>
**Subject:** RE:

Thank you for sharing this information Tony.  I will review this information and work with my team to determine the best way forward.

Thanks,
DM

---

**From:** Manupella, Anthony (ITS)
**Sent:** Tuesday, August 15, 2017 1:46 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:**

Hi David,

Cynthia Erno had sent me an email asking me to contact you. I originally didn't plan on contacting you but I guess if I look at it from her perspective I see her point. I had hoped to never have to deal with Evan Lubin again but he seems fixated on myself and her.  Long story short I had a couple of people in a group of people come up to me at the picnic and ask about Evan. They had stated that he told them that myself and Cynthia were trying to get him fired. That is nowhere near the truth. I have never tried to get anyone fired from any job I ever have had. I just kind of blew it off and told them that Evan did enough to be written up by his boss for harassment.  That was the end of it. I didn't come into

1

contact with Evan at the picnic nor did I hear exactly what he said. So, to me this is nothing other than him blaming others for his issues. Again, I'm sorry to bother you with this.

What's more concerning to me is in the last month or so my 4 active directory accounts as well as LATS had been mysteriously locked out during the day after I have already logged in. I spoke to the head of Active Directory about that and my concerns regarding the last 2 shared domain admin accounts at the WCB. I spoke with Andrew Levine and let him know that I wanted out of those accounts. I suggested to; change the passwords and don't tell me, disable or delete the accounts. They were old WCB legacy accounts used before ITS was formed and we all got our own admin accounts. Shared admin accounts are no longer supposed to be used. Evan and I have our own individual admin accounts to use. Andrew Levine disabled the old shared admin accounts for me. however, I need to speak with Andrew again because the account has been reenabled. Since I didn't use it and I'm sure Andrew and his team didn't re-enable the account, that only leaves Evan.  I am checking with Andrew shortly.

Last week Evan sent an email to myself and 2 others stating that the work I do for WCB had been transitioned to another EUS staff member.  Completely false information. I corrected the lack of factual statements in his email to everyone in the thread and asked him to leave my tasks alone until the WCB SCCM onboarding project is over. Trying in a sneaky way to have my accounts deleted means I cannot contribute to the WCB SCCM onboarding project. Once the WCB SCCM is onboarded to the Enterprise SCCM then the Active Directory Team, **NOT Evan Lubin**, can get rid of all my WCB accounts as I will then have no more tasks assigned to me for the WCB.

Again, I'm sorry to have to bother you with this.

Thank You,

**Anthony Manupella**
**Information Technology Specialist III**
NYS Platforms netForge Cloud Operations
**Office of Information Technology Services**
Building 8, 3rd Fl, Rm 331 #140
W A Harriman Campus
Albany NY 12227

(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

**cynmarie@nycap.rr.com**

| From: | Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov> |
|---|---|
| Sent: | Thursday, March 15, 2018 2:02 PM |
| To: | cynmarie@nycap.rr.com |
| Subject: | FW: Evan Lubin |

Flag Status:            Flagged


Thank You,

## Anthony Manupella
**Information Technology Specialist III**
NYS Platforms netForge Cloud Operations
**Office of Information Technology Services**
Building 8, 3rd Fl, Rm 331 #140
W A Harriman Campus
Albany NY 12227

(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

---

**From:** Mahoney, David (ITS)
**Sent:** Friday, July 14, 2017 11:44 AM
**To:** Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov>
**Subject:** RE: Evan Lubin

Give me a call on this if you have time...

Thanks,
DM

---

**From:** Manupella, Anthony (ITS)
**Sent:** Friday, July 14, 2017 8:45 AM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** Evan Lubin

Good Morning David,

I will get right to the point. Monday, shortly after I came to work, all my accounts were locked out. My NYS, SVC and 2 WCB domain accounts as well as my LATS account. Although I have no proof, I believe it was Evan that locked all my accounts and here is why I believe that. I was already logged in to both my NYS and WCB desktops when my accounts got locked, so it's not a case of me forgetting my password after vacation. We have 2 last shared admin accounts in the WCB domain. Shared by only myself and Evan. These accounts predate ITS and predate us getting individual admin accounts. Since we are both already Domain Admins in the WCB domain, these shared accounts that are not necessary anymore and should be rarely used. Monday I used it to unlock my WCB accounts so I could then open a ticket with the Helpdesk and Business Service Center(BSC) to have my other accounts reset. Someone, (Evan, and again no proof), had changed the password on the shared account back to an old password. It was an old password that only I and Evan

1

would know. In my opinion he got mad about the password change on the shared account and purposely locked all my accounts. During my meeting with Investigator Benitez I told him that it was not a matter of "IF" Evan retaliates to all involved in his sexual harassment incident but "When".

My plan was to email you and then pending your response contact the head of the Active Directory, Andrew Levine, team who sits near me. Since I believe that in the future that Evan will continue, I want the AD team to either remove the 2 old shared accounts from the WCB domain or change the passwords and do not give the passwords to me. I have my own admin account and I don't not want any shared account with Evan. I do not want a situation to occur where he does something maliciously or destructively using that account and then tries to blame me for it. Again I don't have any proof other than he has done similar things like this to me in the past while at WCB.

I will be at the picnic today and plan on staying as far away from him as I can.

Thank You,

## Anthony Manupella
**Information Technology Specialist III**

**Office of Information Technology Services**
Building 8, 3rd Fl, Rm 331 #140
W A Harriman Campus
Albany NY 12227

(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov> |
| **Sent:** | Thursday, March 15, 2018 2:02 PM |
| **To:** | cynmarie@nycap.rr.com |
| **Subject:** | FW: |

**Flag Status:**          Flagged

Thank You,

# Anthony Manupella
**Information Technology Specialist III**
NYS Platforms netForge Cloud Operations
**Office of Information Technology Services**
Building 8, 3rd Fl, Rm 331 #140
W A Harriman Campus
Albany NY 12227

(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

---

**From:** Mahoney, David (ITS)
**Sent:** Friday, April 28, 2017 11:29 AM
**To:** Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov>
**Subject:** RE:

Good Morning Tony,

Please give me a call to discuss your concerns.

Thanks,
DM

---

**From:** Manupella, Anthony (ITS)
**Sent:** Friday, April 28, 2017 10:26 AM
**To:** Mahoney, David (ITS)
**Subject:**

Good morning David,
Sorry to have to bother you. I have a couple of quick questions for you regarding the Evan Lubin issue. I was hoping this was all behind us. Cynthia made myself and maybe Tom Laney aware of Evan's Skype profile statement written in Klingon  "Revenge is a dish best served cold". I can see it .  My question is this. Would Evan be aware of Tom initiating the complaint and who the witnesses are?  I have worked with Mr. Lubin for the last 12 years, so, I'm kind of treating this seriously. But if he is unaware of who the witnesses were and who contacted HR to begin with then I'm less concerned.

# Thank You,

**Anthony Manupella**
**Information Technology Specialist III**

**Office of Information Technology Services**
50 Wolf Road, 3rd Fl, Rm #29
Albany NY 12205
(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov> |
| **Sent:** | Thursday, March 15, 2018 2:03 PM |
| **To:** | cynmarie@nycap.rr.com |
| **Subject:** | FW: Conversation with Scalzo, Traci (ITS) |

Cynthia Erno
Office of the NYS CTO
Windows Server Patching Team

**Office of Information Technology Services (ITS)**
251 Fuller Rd., Zen Bldg., Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS    ← Windows Server group ITSM

---

**From:** Scalzo, Traci (ITS) [mailto:traci.scalzo@its.ny.gov]
**Sent:** Thursday, March 15, 2018 1:36 PM
**To:** Scalzo, Traci (ITS) <Traci.Scalzo@its.ny.gov>; Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** Conversation with Scalzo, Traci (ITS)

Scalzo, Traci (ITS) 1:21 PM:

   As you are probably aware, I sit next to Evan. He told me yesterday that the "charges" against him were dropped and
   none of the "witnesses" would testify. Are you alright?

Erno, Cynthia M (ITS) 1:22 PM:

   He's just lying again.. unbelievable

Scalzo, Traci (ITS) 1:22 PM:

   He says it's all over.

Scalzo, Traci (ITS) 1:22 PM:

   I'm hoping that you are ok

Erno, Cynthia M (ITS) 1:23 PM:

   Don't suppose you are willing to send an email to David Mahoney telling him he said that..

Scalzo, Traci (ITS) 1:23 PM:

   Sure

Scalzo, Traci (ITS) 1:23 PM:

   What do I care

Erno, Cynthia M (ITS) 1:23 PM:

   Anyway, you know what I might do.. I think I'll bring frame and bring that paper from HR that specifically states what
   they found him guilty of and hang it up on my desk

Scalzo, Traci (ITS) 1:23 PM:

   It's a he said she said

Erno, Cynthia M (ITS) 1:24 PM:

   no it isn't

Scalzo, Traci (ITS) 1:24 PM:

   OK

Erno, Cynthia M (ITS) 1:24 PM:

:-)

**Erno, Cynthia M (ITS) 1:24 PM:**

thankfully, I had witnesses that were willing to step up .. that doesn't always happen

**Scalzo, Traci (ITS) 1:25 PM:**

Interesting. He said the witnesses backed out and wouldn't testify.

**Erno, Cynthia M (ITS) 1:26 PM:**

not even close.. we are all upset that David never called us in for that hearing he told me that should have happened last June.. I always figured it was evan's significant union ties that got him out of trouble

**Scalzo, Traci (ITS) 1:26 PM:**

Is it over?

**Erno, Cynthia M (ITS) 1:27 PM:**

sincerely, if you are willing to send that to David, and feel free to copy me in, I'd appreciate it

**Erno, Cynthia M (ITS) 1:27 PM:**

I did not hear anything about it being over, I simply did not get called for a hearing in June

**Scalzo, Traci (ITS) 1:27 PM:**

I'm already typing it up

**Erno, Cynthia M (ITS) 1:28 PM:**

you seriously are the best, as I've always thought.. thank you

**Scalzo, Traci (ITS) 1:29 PM:**

Don't thank me Cynthia. What happened is wrong.

**Erno, Cynthia M (ITS) 1:30 PM:**

believe me I know.. I still seriously cringe whenever I see his name come across an email to our group.. can't help it

**Scalzo, Traci (ITS) 1:33 PM:**

You think Evan telling me that this is all over is important for this situation I take it?

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov> |
| **Sent:** | Thursday, March 15, 2018 2:05 PM |
| **To:** | cynmarie@nycap.rr.com |
| **Subject:** | FW: Conversation with Lubin, Evan (ITS) |

Thank You,

## Anthony Manupella
**Information Technology Specialist III**
NYS Platforms netForge Cloud Operations
**Office of Information Technology Services**
Building 8, 3rd Fl, Rm 331 #140
W A Harriman Campus
Albany NY 12227

(518) 408.0526 | Anthony.Manupella@its.ny.gov
www.its.ny.gov

---

**From:** Lubin, Evan (ITS) [mailto:evan.lubin@its.ny.gov]
**Sent:** Monday, February 27, 2017 12:49 PM
**To:** Lubin, Evan (ITS) <Evan.Lubin@its.ny.gov>; Manupella, Anthony (ITS) <Anthony.Manupella@its.ny.gov>
**Subject:** Conversation with Lubin, Evan (ITS)

Lubin, Evan (ITS) 12:26 PM:

Let me know if you want to be out of the group email, or ITSM...

Lubin, Evan (ITS) 12:27 PM:

I had no idea that I was so hated.

Manupella, Anthony (ITS) 12:27 PM:

what do you mean? by who?

Lubin, Evan (ITS) 12:28 PM:

apparently I came back from vacation to sexual harassment charges.  Please keep it quiet, since I don't even know what I am accused of

Lubin, Evan (ITS) 12:29 PM:

I have only told you and my wife...

Manupella, Anthony (ITS) 12:29 PM:

ouch. ok. do i know the accuser?

1

**Lubin, Evan (ITS) 12:29 PM:**

Yes, she is one of my staff

**Manupella, Anthony (ITS) 12:30 PM:**

ok.no problem.  As far as the email you can keep me in there for awhile and i kind of need to be in ITSM for the AppLocker requests.

**Lubin, Evan (ITS) 12:31 PM:**

I know things aren't always appropriate, but I was never aware of anyone being uncomfortable about it... of course Tom wouldn't elaborate so I have no idea

**Lubin, Evan (ITS) 12:31 PM:**

not a problem on the email and ITSM... I just didn't know if you wanted all the "junk" that goes back and forth

**Manupella, Anthony (ITS) 12:32 PM:**

i have rules for the stuff i don't need.

**Lubin, Evan (ITS) 12:32 PM:**

:)

**Lubin, Evan (ITS) 12:32 PM:**

I think everyone misses you already :)

**Manupella, Anthony (ITS) 12:34 PM:**

well its nice to be missed. i have been in training mode. watching a ton of videos and reading a ton of documentation.

**Lubin, Evan (ITS) 12:35 PM:**

Makes sense, it has to be more fun than what we were doing here

**Manupella, Anthony (ITS) 12:37 PM:**

it is a little boring and certainly not as exciting from day to day. exciting may not be the right word.

**cynmarie@nycap.rr.com**

| | |
|---|---|
| **From:** | Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov> |
| **Sent:** | Wednesday, April 19, 2017 10:14 AM |
| **To:** | 'cynmarie@nycap.rr.com' |
| **Subject:** | FW: Internal Complaint |

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

**From:** Benitez, Jaime (WCB)
**Sent:** Wednesday, April 19, 2017 8:56 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** Internal Complaint

Dear Ms. Erno

This is in response to your complaint filed with ITS in which you alleged, among other things, that you experienced a sexual harassment, hostile environment situation in the workplace.

ITS is committed to all aspects of the principles and practices of affirmative action and equal opportunity employment, including the creation and maintenance of a positive work environment for all agency employees. I have complete the investigation regarding your complaint and have concluded that your allegations of sexual harassment, hostile environment were substantiated. Please be advise that administrative action will be taken to address the situation.

**Jaime Benitez**
Affirmative Action Administrator

**NYS Workers' Compensation Board**
328 State Street, Schenectady, NY 12305
Schenectady (518) 486-5128| Menands (518) 408-0078| jaime.benitez@wcb.ny.gov
http://www.WCB.NY.Gov

This e-mail, including any attachments, may contain confidential, privileged or otherwise legally protected information. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system. Thank you for your cooperation.



**NEW YORK STATE OF OPPORTUNITY.** | **Office of Information Technology Services**

ANDREW M. CUOMO

Governor

ROBERT H. SAMSON

Chief Information Officer

November 21, 2018
Writer's direct dial: (518) 473-2747

James Privitera
U.S. Equal Employment Opportunity Commission
Federal Investigator
*Via Email:* james.privitera@eeoc.gov

> Re:   *Cynthia Erno v. NYS Office of Information Technology Services*
>        EEOC Charge No. *525-2018-00888*

Dear Mr. Privitera:

The New York State Office of Information Technology Services ("Respondent" or "ITS") respectfully submits this position statement and accompanying exhibits in response to the Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC") on April 30, 2018 on the basis of sex (the "Charge") submitted by Cynthia Erno ("Complainant"). Complainant also alleges that ITS subjected her to a hostile work environment and retaliation based on protected activity.

Complainant filed her complaint with the EEOC on April 30, 2018. Because complaints of discrimination must be filed within 300 days of the alleged discriminatory conduct, any workplace conduct alleged by Complainant to have occurred prior to July 4, 2017 is beyond the jurisdictional time frame for consideration by the EEOC.

By submitting this response, ITS expressly reserves its right to provide new, additional, or different, facts or arguments, based upon subsequently acquired evidence or information.

## Background

### ITS History

ITS was formed in November 2012 and charged with creating and delivering solutions that foster a technology-enabled government to best serve New Yorkers. Of relevance here, the formation of ITS in

November 2012 reflected a transformation in the way information technology services are delivered to state agencies in New York. As a result of the transformation, information technology staff employed at more than forty-five New York State agencies transferred into one single new agency, ITS, and began to deliver services to other agencies centrally from the newly-consolidated ITS.

ITS now employs more than 3,500 people – approximately 62% male and 36% female - stationed throughout the State and provides centralized IT services to the State and its governmental entities. ITS also sets statewide technology policy for all State government executive agencies and monitors all large technology expenditures in the State, seeking efficiencies, lower costs, and innovative solutions. Due to its rapid evolution, the structure of ITS and the way in which it provides services to other agencies has changed greatly in a short period of time.

ITS is committed to providing all employees with a work environment free from discrimination, including all forms of harassment. The ITS Employee Handbook and Work Rules ("ITS Work Rules") include a standard of conduct that requires all employees, in the performance of all of their duties, to act in a professional, respectful and courteous manner that reflects positively on themselves, the agency and the State. The ITS Work Rules also include a prohibition against Sexual Harassment and point employees to ITS' policy on Sexual Harassment Prevention. The Sexual Harassment Prevention Policy expressly prohibits retaliation. The ITS Work Rules and Sexual Harassment Prevention Policy are each attached hereto and marked as Exhibits "A" and "B" respectively.

Additionally, ITS provides an internal Discrimination Complaint Form, along with instructions for submitting the form, that is posted on the intranet and widely available to all employees. ITS also requires all employees to complete annual trainings including courses titled "Sexual Harassment In the Workplace" and "Equal Employment Opportunity: Rights and Responsibilities".

**Complainant's Employment History**

Cynthia Erno ("Complainant") is an Information Technology Specialist 3, Grade 23, assigned to ITS' Office of the Chief Technology Officer ("CTO"), Information Technology Service Management (ITSM) Program, Windows Server Patching Group. She began her employment with ITS on November 22, 2012. Her job duties consist of producing and reviewing design documents, providing operational support and leading project teams, ensuring that break/fix calls are handled appropriately, completing administrative reports including Footprints tickets, facilitating system testing, maintaining a clear and complete system, and project documentation. On April 14, 2016, Complainant began work at a new location: 50 Wolf Road in Albany, NY. On November 30, 2017, Complainant again began work at a new location: The College of Nanoscale Science and Engineering, Zen Building (the "CNSE"), 201 Fuller Road in Albany, NY. She is currently working at the CNSE.

**ITS Investigation into Allegations of Discrimination and Efforts to Resolve**

On February 27, 2017, Complainant filed an internal complaint of discrimination ("Internal Complaint") containing many of the same allegations in her current Complaint. Specifically, that Evan Lubin ("Lubin"), her supervisor and a Grade 25 ITS Manager, sexually harassed her by repeating a story on several occasions with strong sexual connotations, possibly suggesting that she use her body to get ahead at work, and by having a webcam at his desk. She perceived the camera of the webcam was directed at her and alleged that it made her uncomfortable.

Complainant falsely claims that ITS took no preventative or corrective measures on her Internal Complaint. Conversely, ITS immediately opened an investigation, which included interviewing Complainant and relevant witnesses. Following those interviews, ITS interrogated Lubin on March 28, 2017. During his interrogation, Lubin admitted to having a personal Webcam at his ITS workstation. At the close of the interrogation, ITS directed Lubin to remove his Webcam.

After analysis of the witness interviews and Lubin's interrogation, ITS determined that the Internal Complaint was substantiated, and took appropriate administrative action against Lubin by issuing a Notice of Discipline ("NOD") on July 5, 2018. Lubin, via his union representative, filed a grievance of the NOD[1] on July 27, 2017, which resulted in the parties scheduling the matter for arbitration. On February 7, 2018, after careful and considerate negotiations and in lieu of arbitration, ITS entered into a Settlement Agreement with Lubin that accounted for all actions and allegations made by Complainant prior to that date. Ultimately, Lubin was disciplined for his actions.

Complainant was notified of the outcome of the investigation on April 19, 2017; however, she was not advised of the terms of the discipline because it was a confidential personnel matter to which she was not privy. Furthermore, ITS did not wait for a resolution to the disciplinary proceeding before taking prompt remedial action. Specifically, ITS took measures to remove Lubin from Complainant's workspace, both physically and logically, including removal of Lubin from her chain of command.

In the Internal Complaint, Complainant requested she be relocated as the remedy; she reiterated this request during her interview. At the close of the investigation, on April 24, 2017, Labor Relations offered to relocate the Complainant. However, she rejected the offer, and instead sought the relocation of Lubin. Accordingly, Labor Relations relocated Lubin.

ITS also took immediate action to resolve a number of concerns raised by Complainant in an email to Labor Relations dated April 24, 2017. (*See Exhibit* "C" – 000001-000010). Those concerns included: that Lubin was still listed as her supervisor in the Leave and Accrual Tracking System ("LATS"); that Lubin was still responding to the Complainant's team's email group; and that Lubin had a new quote on his Skype messenger (in a language made up by the writers of the TV show "Star Trek") that

---

[1] Both the NOD and the grievance are governed by the Agreement between NYS and The Public Employees Federation, AFL-CIO, hereinafter referred to as the "PEF Agreement."

Complainant felt was a threat to her. ITS provided Complainant with instructions for how to remove Lubin as her supervisor on LATS, which is consistent with ITS practices on maintaining LATS information. ITS immediately contacted the appropriate channels to have Lubin reassigned and removed from all applicable email groups. Finally, Labor Relations immediately directed Lubin to remove the quote on his Skype and the quote was removed.[2]

On May 18, 2017, when ITS was notified that Lubin was still not removed from the email group, ITS again promptly responded by submitting a helpdesk ticket to have Lubin removed. ITS also directed Lubin to refrain from participating in any communications with that group and to channel any comments through Traci Scalzo. Importantly, this communication channel was necessary, as Lubin was finishing a project with the team that did not require direct contact with Complainant. (*See Exhibit* "C" – 000011-000018).

On October 25, 2017, Complainant was moved to CNSE due to a reorganization. As this is the location to which Lubin had been reassigned as part of ITS' prior remedial action, ITS removed Lubin from CNSE and assigned him to another location the day prior to Complainant's move. Prior to her moving, ITS and Complainant's chain of command assured her that Lubin had been preemptively relocated. (*See Exhibit* "C" – 000021-000024).

On March 15, 2018, just over a month after ITS and Lubin entered into a Settlement Agreement on the NOD, the Complainant emailed ITS Labor Relations claiming that she heard a rumor that Lubin was discussing the investigation openly in the workplace. According to Complainant, ITS employee Traci Scalzo told Complainant that she heard Lubin state that the Complaint was resolved, he was vindicated, and that no witnesses testified against him. (*See Exhibit* "C" – 000028-000030). Labor Relations immediately contacted Lubin and directed him to cease all discussion about the Complainant and the Complaint. Labor Relations also informed Lubin that charges against him were not resolved, and a new investigation would ensue if the Complainant raised allegations of retaliation.

Labor Relations also reached out to the Complainant in an effort to discuss the allegations contained, which contained some inaccurate information about the disciplinary process, which Labor Relations sought to clarify. Despite several attempts, Labor Relations was never able to connect with Complainant via telephone. On March 26, 2018, Labor Relations emailed Complainant and advised her to work with ITS Affirmative Action Officer ("AAO") if she wished to file a new claim of discrimination in

---

[2] Of note, during an internal investigation, conducted on July 26, 2018, Lubin was questioned about the quote. Lubin confirmed the quote was from the television show "Star Trek" and was written in Klingon (a language made up for characters in the show – it is not an actual language) and meant "change is a dish best served cold," which was in reference to his position at change management. He stated that the quote was not aimed at the Complainant. Complainant admits that a Google search revealed that the Skype quote meant, "change of state is a dish which is best served cold," but she nonetheless believed that the quote was aimed at her, and meant revenge is a dish which is best served cold.

the workplace. (*See Exhibit "C" – 000026-000027*). The AAO reached out to the Complainant on March 26, 2018. (*See Exhibit "C" – 000025-000026*). The two met on April 3, 2018, to discuss Complainant's allegations. The AAO listened to her concerns and advised her of her rights under ITS internal policy, NYS and Federal law. She was also given the Internal Discrimination Complaint Form. Complainant never submitted a second Internal Complaint, and the AAO heard nothing further from Complainant until receipt of the immediate action from the EEOC.

Upon receipt of this Complaint, ITS immediately began a new investigation. All allegations brought by Complainant in her current Complaint that occurred prior to the execution of the February 7, 2018 Settlement Agreement between ITS and Lubin were included in the prior NOD, Settlement Agreement, and resulting discipline. Therefore, they were not revisited by ITS in the most recent investigation.

With respect to the new allegations in the instant Complaint that occurred subsequent to the issuance of the Settlement Agreement on February 7, 2018 – namely, Lubin's alleged statements concerning the resolution of the Internal Complaint against him – ITS again took prompt remedial action, interviewed witnesses and interrogated Lubin on July 26, 2018. According to Complainant, Tracy Scalzo heard Lubin state that the past Complaint was resolved, that he was vindicated, and that no witnesses testified against him. Complainant was not present when Lubin made the alleged statements. She did not hear these comments. The comments were not directed towards her. ITS investigated these allegations, and interviewed all potential witnesses. Some witnesses claimed they heard Lubin state that the case against him was resolved, and Lubin himself admitted to saying this during his interrogation, but none of the witnesses corroborated Scalzo's claims that Lubin stated he was vindicated and no witnesses testified against him.

Nevertheless, ITS again took administrative action, and promptly interrogated Lubin. ITS issued an NOD on July 31, 2018, disciplining Lubin for discussing the matter with other parties. Lubin again filed a Grievance, in accordance with the applicable collective bargaining agreement, and an Arbitration between ITS and Lubin on that matter is scheduled for February 8, 2019.

## Legal Analysis

### Discrimination

Direct evidence of discriminatory intent in equal employment opportunity cases is unusual. Therefore, the U.S. Supreme Court set the standard for the order and allocation of proof in discrimination cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *McDonnell Douglas* states that a complainant must carry the initial burden of establishing a prima facie case of discrimination. This may be accomplished by showing:

1.      That she belongs to a protected class.

2.      That she was adversely affected by an employment action.

3.      That the employer took such action because of her membership in a protected class.

If the complainant can establish this prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason why it took the employment action.  If the employer meets this burden, the complainant must then show that the reason articulated by the employer was a pretext for unlawful discrimination.

Assuming, arguendo, that Complainant has met her burden as to element (1) under the *McDonnell Douglas* analysis, she fails to meet her burden in establishing a prima facie case of discrimination because there has been no adverse employment action.  Rather, ITS took immediate action necessary to investigate and remediate the issues about which she complained.

An adverse employment action occurs when a plaintiff sustains "a materially adverse change" in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). The Second Circuit has noted that "not everything that makes an employee unhappy is an actionable adverse action." *Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). A "materially adverse change" might occur in the context of "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Galabya*, 202 F.3d at 640 (holding that plaintiff's transfer from one special education school to another was not an adverse employment action) (citation omitted).

Complainant alleges that ITS employee Lubin subjected her to repeated sexual harassment and that ITS did nothing to remediate the situation, but rather acted with animus and subjected her to a further hostile work environment.  These allegations are false.  ITS did not take any actions against Complainant based on discriminatory animus.  ITS took prompt and appropriate remedial action upon receipt of the Internal Complaint filed in February of 2017, including discipline of Lubin, and worked to eliminate the need for Complainant to interact with Lubin in carrying out her work-related duties.  ITS also addressed all subsequent issues raised by Complainant.

ITS did not take adverse employment actions against Complainant, and there is no discriminatory animus.  ITS offered to relocate Complainant, at her request, to an alternative work location to remove her from proximity to Lubin where she would remain assigned to the same job duties.  When Complainant had a change of heart, ITS complied with Complainant's request and relocated Lubin instead.  At the time, Complainant agreed that this was a workable solution.  Complainant cannot now be heard to complain that a relocation designed to satisfy her request to relocate is discriminatory.

Complainant also alleges that ITS discriminated against her by denying her opportunities for career advancement. ITS did not take an adverse employment action when it did not grant Complainant a temporary assignment working on the Active Directory ("AD") project. The temporary project was not a promotion. During a Chief Technology Office ("CTO") meeting, Rajiv Rao, the Chief Technology Officer of ITS, advised employees to contact Manohar Mathan concerning positions available working on a temporary AD project. Complainant contacted Mathan and conveyed her desire for a position. However, an entire existing team, the Workplace Innovation Unit ("WIU") within CTO was assigned at 100% capacity to the project because they already had significant experience with the project.

Courts note that an adverse employment action is demonstrated by showing a materially adverse change in the terms and conditions of employment. *Bowen*, 278 F.3d at 117. Complainant did not suffer an adverse employment action when she was not granted a position working on the AD project. It was a temporary project that was ultimately assigned to a team with superior experience. Since filing her Internal Complaint, Complainant has continued to successfully work for ITS in the same or similar capacity. *See Also Siddiqi v. New York City Health & Hospitals Corp.*, 572 F. Supp. 2d 353, 373 (S.D.N.Y.2008) (holding that the employee failed to establish prima facie case of retaliation when he was not promoted to position that he was not qualified for).

Notably, no one at the CTO meeting who expressed interest in the position, male or female, outside of WIU, was assigned to the project. Therefore, Complainant was not subjected to an adverse employment action. To the contrary, Complainant was given a meaningful opportunity to apply for a position and like the other employees who expressed interest in the position, she was not chosen for the opportunity since an entire team was identified as the appropriate resource to meet the operational needs. Due to the WIU team's extensive prior experience on the AD project, it was operationally more efficient to assign them to the project. *See Dugan v. CBS Broad, Inc.*, 2002 WL 338142, at *11 (S.D.N.Y. 2002) (holding that defendant was entitled to summary judgment because it offered a legitimate, non-discriminatory reason for its failure to promote the plaintiff-employee, primarily its operational need).

Lastly, Complainant states that these alleged "adverse" actions were taken due to her sex, claiming that male employees are not treated in this fashion, alleging that approximately 95% of the ITS workforce supervisors are male, and 90% of the ITS workforce is male. This is a naked assertion that is not supported by fact. Workforce analytics show that approximately 62% of ITS supervisors are male, and 61% of the ITS workforce is male.

**Hostile Work Environment**

Complainant alleges that she was subject to a hostile work environment due to ITS' failure to take any remedial action with respect to her complaints, and that she was harassed, bullied, and insulted by ITS management and employees. The standard for determining whether a hostile work environment exists is set forth in *Harris v. Forklift Systems*, 510 U.S. 17 (1993). A court must consider the frequency of the discriminatory conduct; its severity; whether it is threatening and humiliating or a "mere offensive utterance"; and whether it unreasonably interferes with the employee's work

performance. Id. at 21. The Harris standard requires that the conduct be both objectively hostile, such that a reasonable person would view the conduct as hostile, and subjectively hostile, such that the employee in question actually perceived that environment to be abusive. See Feingold v. New York, 366 F. 3d 138, 150 (2d Cir. 2004) (citing Harris v. Forklift Sys., Inc. 510 U.S. 17, 21 (1993)).  And while "the environment need not be 'unendurable' or 'intolerable'" to be actionable (Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2003)), a single offensive incident is usually not enough to establish a hostile work environment (Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2003)).  To prevail on a hostile work environment claim, the plaintiff must also prove that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it (Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 63 (2d Cir. 1992)).

In light of the Harris factors, Complainant's allegations fail to state a hostile work environment claim. Courts have held that Title VII is not "a general civility code" for the workplace.  Oncale v. Sundowner, 523 U.S. 75, 81 (1998).  In Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), the Court found that "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." In Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997), the court held that to be actionable, the complained-of conduct alleged must also be "more than episodic; [it] must be sufficiently continuous and concerted in order to be deemed pervasive."

There is no factual basis to support Complainant's contention that ITS failed to provide any remedial measures to address her claims of discrimination and retaliation.  As evidenced above, ITS took prompt remedial action for each complaint raised by Complainant. At no time did Complainant submit a complaint indicating that she was subject to bullying, belittling, or insults by management or other employees. Instead, on two separate occasions, Complainant sent an email to ITS Labor Relations outlining rumors that she heard, which suggested Lubin was talking about her Complaint and his subsequent discipline with colleagues.  The first email was on August 14, 2017, in which Complainant complained that Lubin discussed the Complaint with colleagues at an ITS picnic.  The second email complaint was received on March 15, 2018, concerning alleged statements made by Lubin expressing his belief that the matter had been resolved.

ITS investigated both of these incidents.  In relation to the August 14, 2017, email about the picnic, ITS uncovered no direct witnesses to Lubin's alleged statements.  In relation to the March 15, 2018 email, ITS determined that Lubin told people that the matter had been resolved, but none of the other alleged statements were corroborated.  In both situations, Complainant was not present and, therefore, did not hear the statements.  Two isolated comments, made completely outside of Complainant's work environment, cannot be considered "sufficiently continuous and concerted" and thus deemed "pervasive" under Perry.  Perry at 149.  Furthermore, even that portion of the alleged statements that Lubin admitted to may only be characterized as a mere utterance and certainly not one that has created an abusive environment under Harris.  Harris at 21.  These two occurrences, in which Lubin allegedly made offhand comments, away from Complainant, cannot possibly considered "extremely serious" under Faragher.  Faragher at 788.

Consequently, ITS uncovered little to no evidence to support these claims when originally made by Complainant, and Complainant has offered none here. Complainant alleges no overtly discriminatory conduct and provides no evidence that her workplace was permeated with discrimination, intimidation, or ridicule based on her sex; rather, she complains of what could be best characterized as one poorly-made statement, by one ITS employee.

Here, there is no objective basis to support Complainant's contention that she was subject to a hostile work environment.  A reasonable employee in Complainant's position would not view ITS' repeated attempts to remedy Complainant's allegations as discriminatory or retaliatory, or as providing Complainant with no avenue for resolution.  Instead, as outlined above, ITS responded promptly to allow allegations raised by Complainant. Complainant's assertion that she was subject to a hostile work environment due to ITS' discrimination, retaliation, and failure to take remedial action is baseless.

Although Complainant provides no evidence of a hostile work environment, ITS nonetheless took extraordinary measures to resolve her concerns.  To prevail on a hostile work environment claim, the plaintiff must also prove that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it. (*Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992)).  As indicated, ITS investigated her complaints and took appropriate corrective action.  Lubin was counseled verbally, interrogated, and appropriate administrative action was taken, including formal discipline.  ITS provided many reasonable avenues to the Complainant so that she could continue to work in a discrimination free environment, Complainant cannot now be heard to complain that she was subjected to a hostile work environment due to ITS' failure to take remedial measures.

### Retaliation

Complainant claims that ITS retaliated against her by failing to discipline Lubin for stating that the initial Complaint was resolved.  She also alleges that her work requests were not regularly responded to, and she was ignored by her peers.  Courts evaluate retaliation claims under the burden-shifting analysis articulated in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  Under this analysis, an employee alleging retaliation must show: (1) she engaged in an activity protected by the Title VII; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the alleged protected activity.  See *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  Once a litigant establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If the employer meets this burden, the employee "must point to evidence that would be sufficient to permit a rational fact finder to conclude that the [employer's] explanation is merely a pretext for impermissible retaliation." Id. at 721.

The Complainant indicated once in a September 2017 email that her work requests were not regularly responded to by her coworkers.  (*See Exhibit "C" – 000020*).  This is a bare assertion and no witness interviewed in relation to this allegation corroborated this statement.

Also, as addressed above, ITS did not retaliate against the Complainant by failing to discipline Lubin for his statements. To the contrary, Complainant's concerns were promptly addressed. Lubin was immediately directed to refrain from making any statements concerning Complainant's 2017 complaint or the subsequent discipline ITS took against him. ITS proactively engaged Lubin and directed him to refrain from discussing the matter publicly. Upon receipt of this Complaint, containing additional allegations, ITS interrogated Lubin and disciplined him accordingly.

Finally, Complainant alleges that ITS' failure to address her Complaints constitutes a material adverse employment action because it might dissuade a reasonable worker from making or supporting a claim of discrimination in the future. This assertion is ridiculous under the circumstances. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (finding that "The significance of an act of retaliation is evaluated in context."..."trivial harms," such as "petty slights, minor annoyances, and simple lack of good manners" are not usually prohibited because such actions are not likely to deter victims of discrimination from complaining). As fully briefed herein, ITS took Complainant's allegations seriously at every turn and addressed them according to established policies and procedures. That Complainant may have felt that no action was taken because she was unaware that the discipline dealt to Lubin does not equate to inaction by ITS. ITS' actions were appropriate under the circumstances and do not equate to an adverse employment action against Complainant.

### Conclusion

Based upon the foregoing, Respondent respectfully requests that the EEOC issue a determination dismissing the present case, with a determination that there is no evidence that the statutes concerning discrimination, hostile work environment, or retaliation have been violated.

This response is based upon Respondent's understanding of the facts and the information reviewed thus far. Respondent reserves its right to present new or additional information at a later date for reasons relating to substance or clarification. Moreover, by responding to this charge, Respondent does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist in connection with the Charge and the Complainant's allegations.

Please do not hesitate to contact me if I may provide further information or be of any assistance.

Very truly yours,

*Lauren Holupko*

Lauren Holupko
Senior Attorney

**EXHIBITS**

| | |
|---|---|
| **Exhibit A:** | ITS Employee Handbook and Work Rules |
| **Exhibit B:** | ITS Sexual Harassment Prevention Policy |
| **Exhibit C:** | Relevant Emails |

# EXHIBIT C

# RE: Internal Complaint

Spratt, Marcy (ITS)

Mon 4/24/2017 3:36 PM

To:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Thank you!

**From:** Mahoney, David (ITS)
**Sent:** Monday, April 24, 2017 3:21 PM
**To:** Spratt, Marcy (ITS) <Marcy.Spratt@its.ny.gov>
**Cc:** Green, David (ITS) <David.Green@its.ny.gov>
**Subject:** RE: Internal Complaint

That is correct... Mr. Lubin has been reassigned to the CNSE, effective 4/24 (today), and we are preparing a NOD for issuance.

DM

**From:** Spratt, Marcy (ITS)
**Sent:** Monday, April 24, 2017 3:10 PM
**To:** Mahoney, David (ITS)
**Cc:** Green, David (ITS)
**Subject:** FW: Internal Complaint

Thank you, DG for working through this with GOER and Benitez while I was out. I assume Mr. Mahoney will take appropriate administrative action based on your legal recommendations. Please let me know if my assistance is needed at any time to support those efforts.

**From:** Benitez, Jaime (WCB)
**Sent:** Wednesday, April 19, 2017 8:59 AM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Cc:** Green, David (ITS) <David.Green@its.ny.gov>; Spratt, Marcy (ITS) <Marcy.Spratt@its.ny.gov>
**Subject:** FW: Internal Complaint

Good Morning David, I am forwarding the communication I sent to the complainant. Thanks again.

## Jaime Benitez
Affirmative Action Administrator

### NYS Workers' Compensation Board
328 State Street, Schenectady, NY 12305
Schenectady (518) 486-5128| Menands (518) 408-0078| jaime.benitez@wcb.ny.gov
http://www.WCB.NY.Gov

**From:** Benitez, Jaime (WCB)
**Sent:** Wednesday, April 19, 2017 8:56 AM
**To:** Erno, Cynthia M (ITS)
**Subject:** Internal Complaint

Dear Ms. Erno

This is in response to your complaint filed with ITS in which you alleged, among other things, that you experienced a sexual harassment, hostile environment situation in the workplace.

ITS is committed to all aspects of the principles and practices of affirmative action and equal opportunity employment, including the creation and maintenance of a positive work environment for all agency employees. I have complete the investigation regarding your complaint and have concluded that your allegations of sexual harassment, hostile environment were substantiated. Please be advise that administrative action will be taken to address the situation.

## Jaime Benitez
Affirmative Action Administrator

**NYS Workers' Compensation Board**
328 State Street, Schenectady, NY 12305
Schenectady (518) 486-5128| Menands (518) 408-0078| jaime.benitez@wcb.ny.gov
http://www.WCB.NY.Gov

---

This e-mail, including any attachments, may contain confidential, privileged or otherwise legally protected information. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system. Thank you for your cooperation.

# RE: a few things

Erno, Cynthia M (ITS)

Tue 4/25/2017 10:28 AM

To:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Good morning David.
Thank you.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

**From:** Mahoney, David (ITS)
**Sent:** Tuesday, April 25, 2017 10:08 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** RE: a few things

Good Morning Cynthia,

Thank you for letting us know about these concerns.  I will speak with the chain of command about his use of the email group identified below.  As for the change in LATS, those instructions can be found here.

Thanks,
DM

**From:** Erno, Cynthia M (ITS)
**Sent:** Monday, April 24, 2017 5:06 PM
**To:** Mahoney, David (ITS)
**Subject:** a few things

David,

1st – he's still listed as my supervisor in Lats.
2nd – he's still responding to people who email us on our group email its.dl.dch.windows.patching.
And the reason I'm not giving you more time to resolve the first two is what I just spotted.
I don't usually go in skype because I have so many windows open that it is too much on this simple workstation I was given.
I had to today for a project manager that needed something.. so I spotted this:



**Lubin, Evan (ITS)** - Offline 3 hours
choH bIr jablu'DI', reH QaQqu' nay'

So I googled and found that this is what always comes up:
**Revenge is a dish which is best served cold.**
http://www.klingon.org/smboard/index.php?topic=141.0  - one link of many stating this phrase is the most common Klingon use of this saying.

But I noticed he uses Choh instead of bortaS.
However, I assume it's a clever way to deny what he is putting out there because I can't specifically find why to use choh instead of bortaS.
I did find that choh means "change of state".
So change of state is a dish which is best served cold.
Sure, nobody gets that threat (facetious of course). Especially since if anyone googles, the most common "message" reached is the one about revenge.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

## RE: Patching Schedule

Laney, Thomas (ITS)

Thu 4/27/2017 11:09 AM

To:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Dave,

I just left you a voicemail.

Please advise on how to proceed. We had discussed Evan's continued short term involvement with the Windows Patching team until a new manager could be brought up to speed, but Cynthia's email below may change that plan.

FYI, I am only waiting on Evan's paperwork for CNSE access to be sent to me, so I can request his building access and have him begin reporting to CNSE daily. He has been working remotely since Monday.

**Tom Laney**
Manager of Information Technology 1, Data Center Hosting

**Office of Information Technology Services**
50 Wolf Rd, 3rd Floor
Albany, NY 12205
518-474-9497 | Thomas.Laney@its.ny.gov
www.its.ny.gov

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, April 27, 2017 10:41 AM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** FW: Patching Schedule

Is it really hard to grasp how disrespectful it is to what I had to endure that his continued involvement, when he's been asked to step aside, makes me feel extremely uncomfortable?
There has not been one thing that he has responded that needed his particular involvement.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd., Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN    ← Windows Server group ITSM

**From:** Lubin, Evan (ITS)
**Sent:** Wednesday, April 26, 2017 1:49 PM
**To:** Flagler, Sandi (ITS) <Sandi.Flagler@its.ny.gov>; its.dl.dch.windows.patching
<its.dl.dch.windows.patching@its.ny.gov>
**Subject:** RE: Patching Schedule

That schedule is correct Sandi, with the exception of the Production cleanup run, which we no longer do.
The ITSM patch groups for Legacy implied that those servers were patched by the HEAT product which although budgeted, was not purchased.  Therefore the licenses expired and we are only using SCMM now.
The patch groups are duplicated in SCCM, and will eventually be condensed.  But the patching windows remain the same.

Thank you,
**Evan Lubin**
DCH Windows Technical Change Manager
Information Technology Specialist 4
**Office of Information Technology Services**
50 Wolf Rd., Colonie NY 12232
Contacts | Evan.Lubin@ITS.ny.gov
www.its.ny.gov


**From:** Flagler, Sandi (ITS)
**Sent:** Wednesday, April 26, 2017 1:43 PM
**To:** its.dl.dch.windows.patching <its.dl.dch.windows.patching@its.ny.gov>
**Subject:** Patching Schedule

Below is the latest schedule I have for the DCH Patching Schedule.

Will someone please update this schedule?  I am trying to determine when some DCJS servers are being patched, and I see that some of these servers are in Patch Groups that are not in the below schedule.  For example, there are groups in the Server Records called "2 Test" and others called "2 Test Legacy."  I'm not sure if the patching on these servers are done at the same time or at different times.

Thanks.

| Group/Function | Time | Relative Maintenance Window/Date |
|---|---|---|
| Patch Tuesday | | Second Tuesday of the Month |
| 1Test | | LAB servers only<br>1st Wednesday after Patch Tuesday (day after Patch Tuesday) |
| 2Test | 4:00 a.m. - 7:00 a.m. | DEV and TEST servers<br>1st Friday after Patch Tuesday |
| 3Staging | 4:00 a.m. - 7:00 a.m. | Staging/Pseudo, some Prod<br>2nd Wednesday after Patch Tuesday |

| | | |
|---|---|---|
| Cleanup (lower) | 4:00 a.m. - 7:00 a.m. | Cleanup for 2TEST and 3STAGING 2nd Friday after Patch Tuesday |
| 4Prod 7PM | 7:00 p.m. - 9:00 p.m. | 2nd Tuesday after Patch Tuesday |
| 4Prod | 4:00 a.m. - 7:00 a.m. | Less critical PROD servers, plus 3rd Wednesday after Patch Tuesday |
| 5Prod 7PM | 7:00 p.m. - 9:00 p.m. | 3rd Thursday after Patch Tuesday |
| 5Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers 3rd Friday after Patch Tuesday |
| 6Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers 4th Wednesday after Patch Tuesday |
| 7Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers 4th Wednesday after Patch Tuesday |
| Cleanup (all) | | 5th Wednesday after Patch Tuesday |

**Sandi Flagler**
Manager, Data Center Hosting – Windows Server Build/Troubleshooting

**Office of Information Technology Services**
50 Wolf Road, 3rd Floor, Albany, NY  12205
w. (518) 457-8195 | h. (518) 464-9724 | c. (518) 859-0819 | Sandi.Flagler@its.ny.gov
www.its.ny.gov

# RE: Patching Schedule

### Mahoney, David (ITS)

Fri 4/28/2017 11:19 AM

Sent Items

To:Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>;

Bcc:Funchion, Andrea (ITS) <Andrea.Funchion@its.ny.gov>; Valla, Robert (ITS) <Robert.Valla@its.ny.gov>;

Good Morning Cynthia,

I have spoken with Tom about your expressed concerns and Evan's transition to a new assignment.

Please give me a call to discuss your email below.

Thanks,
DM

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, April 27, 2017 10:41 AM
**To:** Mahoney, David (ITS); Laney, Thomas (ITS)
**Subject:** FW: Patching Schedule

Is it really hard to grasp how disrespectful it is to what I had to endure that his continued involvement, when he's been asked to step aside, makes me feel extremely uncomfortable?
There has not been one thing that he has responded that needed his particular involvement.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

**From:** Lubin, Evan (ITS)
**Sent:** Wednesday, April 26, 2017 1:49 PM
**To:** Flagler, Sandi (ITS) <Sandi.Flagler@its.ny.gov>; its.dl.dch.windows.patching
<its.dl.dch.windows.patching@its.ny.gov>
**Subject:** RE: Patching Schedule

That schedule is correct Sandi, with the exception of the Production cleanup run, which we no longer do.
The ITSM patch groups for Legacy implied that those servers were patched by the HEAT product which although budgeted, was not purchased.  Therefore the licenses expired and we are only using SCMM now.

The patch groups are duplicated in SCCM, and will eventually be condensed.  But the patching windows remain the same.

Thank you,
**Evan Lubin**
DCH Windows Technical Change Manager
Information Technology Specialist 4
Office of Information Technology Services
50 Wolf Rd., Colonie NY 12232
Contacts | Evan.Lubin@ITS.ny.gov
www.its.ny.gov

**From:** Flagler, Sandi (ITS)
**Sent:** Wednesday, April 26, 2017 1:43 PM
**To:** its.dl.dch.windows.patching <its.dl.dch.windows.patching@its.ny.gov>
**Subject:** Patching Schedule

Below is the latest schedule I have for the DCH Patching Schedule.

Will someone please update this schedule?  I am trying to determine when some DCJS servers are being patched, and I see that some of these servers are in Patch Groups that are not in the below schedule.  For example, there are groups in the Server Records called "2 Test" and others called "2 Test Legacy."  I'm not sure if the patching on these servers are done at the same time or at different times.

Thanks.

| Group/Function | Time | Relative Maintenance Window/Date |
|---|---|---|
| Patch Tuesday | | Second Tuesday of the Month |
| 1Test | | LAB servers only<br>1st Wednesday after Patch Tuesday (day after Patch Tuesday) |
| 2Test | 4:00 a.m. - 7:00 a.m. | DEV and TEST servers<br>1st Friday after Patch Tuesday |
| 3Staging | 4:00 a.m. - 7:00 a.m. | Staging/Pseudo, some Prod<br>2nd Wednesday after Patch Tuesday |
| Cleanup (lower) | 4:00 a.m. - 7:00 a.m. | Cleanup for 2TEST and 3STAGING<br>2nd Friday after Patch Tuesday |
| 4Prod 7PM | 7:00 p.m. - 9:00 p.m. | 2nd Tuesday after Patch Tuesday |
| 4Prod | 4:00 a.m. - 7:00 a.m. | Less critical PROD servers, plus<br>3rd Wednesday after Patch Tuesday |
| 5Prod 7PM | 7:00 p.m. - 9:00 p.m. | 3rd Thursday after Patch Tuesday |
| 5Prod | 4:00 a.m. - 7:00 a.m. | |

| | | Critical PROD servers 3rd Friday after Patch Tuesday |
|---|---|---|
| 6Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers 4th Wednesday after Patch Tuesday |
| 7Prod | 4:00 a.m. - 7:00 a.m. | Critical PROD servers 4th Wednesday after Patch Tuesday |
| Cleanup (all) | | 5th Wednesday after Patch Tuesday |

**Sandi Flagler**
Manager, Data Center Hosting – Windows Server Build/Troubleshooting

**Office of Information Technology Services**
50 Wolf Road, 3rd Floor, Albany, NY  12205
w. (518) 457-8195 | h. (518) 464-9724 | c. (518) 859-0819 | Sandi.Flagler@its.ny.gov
www.its.ny.gov

## Re: a few things

**Laney, Thomas (ITS)**

Thu 5/18/2017 3:18 PM

To:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Cc:Funchion, Andrea (ITS) <Andrea.Funchion@its.ny.gov>;

David,

I have time now. Can you call my work cell @ 518-424-7764.

Thanks,

Sent from my iPhone

On May 18, 2017, at 1:05 PM, Mahoney, David (ITS) <David.Mahoney@its.ny.gov> wrote:

> Good Afternoon Tom,
>
> Please give me a shout at your earliest convenience, re: message below.  I'd like to discuss possible options/solutions.
>
> Thanks very much,
>
> David M.
>
> **From:** Erno, Cynthia M (ITS)
> **Sent:** Thursday, May 18, 2017 12:53 PM
> **To:** Mahoney, David (ITS)
> **Subject:** RE: a few things
>
> Need some advice please David.
> Evan has been left on the its.dl.dch.windows.patching <its.dl.dch.windows.patching@its.ny.gov> email so when I email the group, I remove his name.
> He's finally out of the building but it turns my stomach to communicate with the man that sexually harassed and threatened me.. literally turns my stomach.
> My new boss, who is great so far, wants me to email the whole list.
> I think it's one thing if she has to work with him for transition but quite another to have to communicate with him myself.
> Advice?
> (When she first started she asked what had happened to Evan and I said we weren't supposed to talk about it.  I just said that to shut down talking to anyone else about it.)
>
> **Cynthia Erno**
> Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506  cynthia.erno@its.ny.gov
L3 DCH WIN      ←    Windows Server group ITSM

**From:** Mahoney, David (ITS)
**Sent:** Tuesday, April 25, 2017 10:08 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** RE: a few things

Good Morning Cynthia,

Thank you for letting us know about these concerns.  I will speak with the chain of command about his use of the email group identified below.  As for the change in LATS, those instructions can be found here.

Thanks,
DM

**From:** Erno, Cynthia M (ITS)
**Sent:** Monday, April 24, 2017 5:06 PM
**To:** Mahoney, David (ITS)
**Subject:** a few things

David,

1st – he's still listed as my supervisor in Lats.
2nd – he's still responding to people who email us on our group email its.dl.dch.windows.patching. And the reason I'm not giving you more time to resolve the first two is what I just spotted.
I don't usually go in skype because I have so many windows open that it is too much on this simple workstation I was given.
I had to today for a project manager that needed something.. so I spotted this:
<image001.jpg>
So I googled and found that this is what always comes up:
Revenge is a dish which is best served cold.
http://www.klingon.org/smboard/index.php?topic=141.0 - one link of many stating this phrase is the most common Klingon use of this saying.

But I noticed he uses Choh instead of bortaS.
However, I assume it's a clever way to deny what he is putting out there because I can't specifically find why to use choh instead of bortaS.
I did find that choh means "change of state".
So change of state is a dish which is best served cold.
Sure, nobody gets that threat (facetious of course). Especially since if anyone googles, the most common "message" reached is the one about revenge.

## Cynthia Erno
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN     ←   Windows Server group ITSM

# RE: Communication With Cynthia Erno

Lubin, Evan (ITS)

Fri 5/19/2017 8:15 AM

To:Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>;

Cc:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Scalzo, Traci (ITS) <Traci.Scalzo@its.ny.gov>;

I will submit the request, I was able to add Traci, but I can't transfer ownership

**Evan Lubin**
DCH Windows Technical Change Manager
Information Technology Specialist 4
**Office of Information Technology Services**
201 Fuller Road, Zen Building
Albany, NY 12203
Contacts | Evan.Lubin@ITS.ny.gov
www.its.ny.gov

**From:** Laney, Thomas (ITS)
**Sent:** Friday, May 19, 2017 8:11 AM
**To:** Lubin, Evan (ITS) <Evan.Lubin@its.ny.gov>
**Cc:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Scalzo, Traci (ITS) <Traci.Scalzo@its.ny.gov>
**Subject:** RE: Communication With Cynthia Erno

I have already submitted a request to have you removed from the Patching Distribution list.

I have been a little busy lately, so I apologize for not responding to your emails. We will have Dave Patrick update his manager in LATS to Traci. Traci and I will take care of any approvals for the Patching team. Please assign management of the L3 DCH WIN PATCH to Traci. If you cannot do so through ITSM group management, please submit a request to do so. Once management of the group is reassigned, then we can remove you from the group.

**Tom Laney**
Manager of Information Technology 1, Data Center Hosting

**Office of Information Technology Services**
50 Wolf Rd, 3rd Floor
Albany, NY 12205
518-474-9497 | Thomas.Laney@its.ny.gov
www.its.ny.gov

**From:** Lubin, Evan (ITS)
**Sent:** Friday, May 19, 2017 7:47 AM
**To:** Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Cc:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Scalzo, Traci (ITS) <Traci.Scalzo@its.ny.gov>
**Subject:** RE: Communication With Cynthia Erno

That is fine Tom,

    Please see if Ann Marie can remove me from the distribution list.  The only reason I was involved this past week is you specifically told me to.

    In addition, you never acknowledged my emails about David, he is still reporting to me in LATs, and should be moved to a new supervisor.

    Should I no longer approve patch change controls? Or route tickets for the L3 DCH WIN PATCH ITSM group? It will also need to be transferred to a new manager.

Thank you,

**Evan Lubin**
DCH Windows Technical Change Manager
Information Technology Specialist 4
**Office of Information Technology Services**
201 Fuller Road, Zen Building
Albany, NY 12203
Contacts | Evan.Lubin@ITS.ny.gov
www.its.ny.gov


**From:** Laney, Thomas (ITS)
**Sent:** Friday, May 19, 2017 7:35 AM
**To:** Lubin, Evan (ITS) <Evan.Lubin@its.ny.gov>
**Cc:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Scalzo, Traci (ITS) <Traci.Scalzo@its.ny.gov>
**Subject:** Communication With Cynthia Erno

Evan,

Moving forward, do not participate in any communications involving the Windows Patching team and their distribution list. If you have questions or comments, please funnel anything through Traci Scalzo.

**Tom Laney**
Manager of Information Technology 1, Data Center Hosting

**Office of Information Technology Services**
50 Wolf Rd, 3rd Floor
Albany, NY 12205
518-474-9497 | Thomas.Laney@its.ny.gov
www.its.ny.gov

# RE: a few things

**Erno, Cynthia M (ITS)**

Fri 5/19/2017 10:25 AM

To:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Thank you.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506  cynthia.erno@its.ny.gov
L3 DCH WIN    ←    Windows Server group ITSM

**From:** Mahoney, David (ITS)
**Sent:** Friday, May 19, 2017 10:24 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** RE: a few things

Cynthia,

Please be advised that a ticket has been submitted to remove Evan Lubin from the DCH Windows Patching Distribution List.

Thank you,
David M.

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, May 18, 2017 12:53 PM
**To:** Mahoney, David (ITS)
**Subject:** RE: a few things

Need some advice please David.
Evan has been left on the its.dl.dch.windows.patching <its.dl.dch.windows.patching@its.ny.gov> email so when I email the group, I remove his name.
He's finally out of the building but it turns my stomach to communicate with the man that sexually harassed and threatened me.. literally turns my stomach.
My new boss, who is great so far, wants me to email the whole list.
I think it's one thing if she has to work with him for transition but quite another to have to communicate with him myself.
Advice?
(When she first started she asked what had happened to Evan and I said we weren't supposed to talk about it.  I just said that to shut down talking to anyone else about it.)

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN     ←   Windows Server group ITSM

**From:** Mahoney, David (ITS)
**Sent:** Tuesday, April 25, 2017 10:08 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** RE: a few things

Good Morning Cynthia,

Thank you for letting us know about these concerns.  I will speak with the chain of command about his use of
the email group identified below.  As for the change in LATS, those instructions can be found here.

Thanks,
DM

**From:** Erno, Cynthia M (ITS)
**Sent:** Monday, April 24, 2017 5:06 PM
**To:** Mahoney, David (ITS)
**Subject:** a few things

David,

1st – he's still listed as my supervisor in Lats.
2nd – he's still responding to people who email us on our group email its.dl.dch.windows.patching.
And the reason I'm not giving you more time to resolve the first two is what I just spotted.
I don't usually go in skype because I have so many windows open that it is too much on this simple workstation I
was given.
I had to today for a project manager that needed something.. so I spotted this:



Lubin, Evan (ITS) - Offline 3 hours
choH bIr jablu'DI', reH QaQqu' nay'

So I googled and found that this is what always comes up:
Revenge is a dish which is best served cold.
http://www.klingon.org/smboard/index.php?topic=141.0  - one link of many stating this phrase is the most
common Klingon use of this saying.

But I noticed he uses Choh instead of bortaS.
However, I assume it's a clever way to deny what he is putting out there because I can't specifically find why to
use choh instead of bortaS.

I did find that choh means "change of state".
So change of state is a dish which is best served cold.
Sure, nobody gets that threat (facetious of course). Especially since if anyone googles, the most common "message" reached is the one about revenge.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN    ←   Windows Server group ITSM

# FW: update requested

## Mahoney, David (ITS)

Mon 8/14/2017 5:16 PM

Sent Items

To:Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>;

Cynthia, we are continuing with our disciplinary proceeding.  At this time, we are awaiting a possible date for arbitration.

In the meantime, please have Tony reach out to me to share any information that he may have of Evan's concerning behavior at the picnic, etc.

Thanks,
DM

From: Erno, Cynthia M (ITS)
Sent: Monday, August 14, 2017 4:31 PM
To: Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
Subject: update requested

David,

Recently Tony M. told me when he was at the picnic that a former co-worker of his asked him why Evan was telling everyone that would listen that Tony and Cynthia are trying
to get him fired.
I have a tendency to be a turtle sometimes.  Just keep my head down and work hard despite what others may be up to.  However, I would be angry at myself for not stating outright
that this can not be allowed to continue.  I will not just set back and continually let him trash my career – which is exactly what he is doing by mouthing off about the sexual harassment
complaint in this male dominated agency.
Please give me any updates you have on what is going on with this?

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN   ←   Windows Server group ITSM

## RE: EDB055 for incident INC2526262

Erno, Cynthia M (ITS)

Wed 9/6/2017 12:40 PM

To Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>; Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Thank you for clarifying.
But across the agency, I have people that don't return my emails anymore and I'm getting angry because the only reason I can see that I would be shunned would be because Evan is continually opening his mouth. (Just so you know Tom, he is continually opening his mouth and those that can be proven have been sent to David's attention.)

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN    ←   Windows Server group ITSM

**From:** Laney, Thomas (ITS)
**Sent:** Wednesday, September 06, 2017 11:48 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>; Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** RE: EDB055 for incident INC2526262

Evan was participating in the weekly RCA meeting and was providing historical information on the status of Windows servers being discussed. The meeting was not directly related to SCCM patching, but was to discuss Severity 1 incidents across the ITS enterprise.

**Tom Laney**
Manager of Information Technology Services II
Data Center Hosting Windows\Hypervisor

**Office of Information Technology Services**
50 Wolf Rd, 3rd Floor
Albany, NY 12205
518-474-9497 | Thomas.Laney@its.ny.gov
www.its.ny.gov

**From:** Erno, Cynthia M (ITS)
**Sent:** Wednesday, September 06, 2017 11:37 AM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>; Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** FW: EDB055 for incident INC2526262

David,
Why is Evan still being pulled into meetings that have to do with my unit?
Just think for a minute.. I have him going around trashing me and Tony and he is still having continual access/contact with those that supervise me?
Hurtful to my career?  I absolutely believe that to be true.

**Cynthia Erno**
Data Center Hosting, Windows Unit

**Office of Information Technology Services (ITS)**
50 Wolf Rd.,  Albany, NY 12204
(518) 408-5506 cynthia.erno@its.ny.gov
L3 DCH WIN    ←   Windows Server group ITSM

**From:** Bolk, Paul (ITS)
**Sent:** Wednesday, September 06, 2017 11:26 AM
**To:** Dzembo, Tom (ITS) <Tom.Dzembo@its.ny.gov>; Qi, Hui (ITS) <Hui.Qi@its.ny.gov>; its.dl.esse.windows.patching <its.dl.esse.windows.patching@its.ny.gov>
**Cc:** ITS.DL.PLAT.DBA.MSSQL.MANAGERS <ITS.DL.PLAT.DBA.MSSQL.MANAGERS@its.ny.gov>
**Subject:** RE: EDB055 for incident INC2526262

Yes that one server was inadvertently left in the original patch group and also added to the no patch group.  It was removed from the original patch group yesterday so it will not be patched again by SCCM.

# RE: move to 257 fuller road

## Mahoney, David (ITS)

Thu 10/26/2017 2:36 PM

Sent Items

To:Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>;

Not a problem at all...  Just wanted to confirm that there wasn't any possible issues on the horizon, re: co-location...

Thanks,
DM

**From:** Laney, Thomas (ITS)
**Sent:** Thursday, October 26, 2017 2:35 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** RE: move to 257 fuller road

David,

As Cynthia and the rest of the Patching team moved to CNSE as of yesterday morning, I moved Evan back to Wolf Rd as of Tuesday afternoon, so they would not be crossing paths.

Was there a problem with this?

## Tom Laney
Manager of Information Technology Services II
Data Center Hosting Windows\Hypervisor\x86 Hardware

### Office of Information Technology Services
50 Wolf Rd, 3rd Floor
Albany, NY 12205
518-474-9497 | Thomas.Laney@its.ny.gov
www.its.ny.gov

**From:** Mahoney, David (ITS)
**Sent:** Thursday, October 26, 2017 2:29 PM
**To:** Laney, Thomas (ITS) <Thomas.Laney@its.ny.gov>
**Subject:** FW: move to 257 fuller road

Any insight that you might be able to share?

Thanks tom,

David M.

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, October 26, 2017 1:19 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** move to 257 fuller road

David,

I was told that I didn't have to contact you because mgmt. knew my unit was moving to 257 fuller road (cnse) and that
there were plans to bring Evan back to wolf road.  However, since I don't know for a fact that this has happened, I was
hoping you would tell me that it has been completed.
Thank you,


**Cynthia Erno**
Office of the NYS CTO
Windows Server Patching Team

**Office of Information Technology Services (ITS)**
257 Fuller Rd.,  Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS     ← Windows Server group ITSM

# RE: move to 257 fuller road

Erno, Cynthia M (ITS)

Thu 10/26/2017 2:38 PM

To:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Thank you very much David.

**Cynthia Erno**
Office of the NYS CTO
Windows Server Patching Team

**Office of Information Technology Services (ITS)**
257 Fuller Rd.,  Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS    ← Windows Server group ITSM

**From:** Mahoney, David (ITS)
**Sent:** Thursday, October 26, 2017 2:38 PM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Subject:** RE: move to 257 fuller road

It has been confirmed that Evan has been re-assigned to 50 Wolf Road.

Thanks,
DM

**From:** Erno, Cynthia M (ITS)
**Sent:** Thursday, October 26, 2017 1:19 PM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** move to 257 fuller road

David,

I was told that I didn't have to contact you because mgmt. knew my unit was moving to 257 fuller road (cnse) and that
there were plans to bring Evan back to wolf road.  However, since I don't know for a fact that this has happened, I was
hoping you would tell me that it has been completed.
Thank you,

**Cynthia Erno**
Office of the NYS CTO

Windows Server Patching Team

**Office of Information Technology Services (ITS)**
257 Fuller Rd.,  Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS    ← Windows Server group ITSM

# RE: FW: HR Issue

**Erno, Cynthia M (ITS)**

Tue 3/27/2018 12:51 PM

To:Shilesh, Shinu (ITS) <SHINU.SHILESH@its.ny.gov>;

Cc:Mahoney, David (ITS) <David.Mahoney@its.ny.gov>;

Ok, April 3rd it is.

**Cynthia Erno**
Office of the NYS CTO
Windows Server Patching Team

**Office of Information Technology Services (ITS)**
251 Fuller Rd., Zen Bldg., Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS      ←   Windows Server group ITSM

**From:** Shilesh, Shinu (ITS)
**Sent:** Tuesday, March 27, 2018 12:08 PM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Cc:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** RE: FW: HR Issue

Cynthia –

On April 3rd morning I am scheduled to be there for new employee orientation and it is scheduled to conclude at noon.  If that day works for you, I could meet you at noon.  Let me know.

Shinu

**From:** Erno, Cynthia M (ITS)
**Sent:** Tuesday, March 27, 2018 11:49 AM
**To:** Shilesh, Shinu (ITS) <SHINU.SHILESH@its.ny.gov>
**Cc:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** RE: FW: HR Issue

Shinu,

When would you be available to meet me here at Zen building?

**Cynthia Erno**
Office of the NYS CTO
Windows Server Patching Team

**Office of Information Technology Services (ITS)**
251 Fuller Rd., Zen Bldg., Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS    ← Windows Server group ITSM

**From:** Shilesh, Shinu (ITS)
**Sent:** Tuesday, March 27, 2018 11:05 AM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Cc:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Subject:** RE: FW: HR Issue

Good morning Cynthia –

I am in receipt of your email.  I am certainly available to discuss your concerns.  I would be happy to set up a time to meet with you based on your availability.

V/r,

Shinu

**Shinu Shilesh**
Director, Affirmative Action Programs

 **Office of Information Technology Services**

Empire State Plaza, Swan St, Core 4, Albany, NY 12226
(518) 549-1147 | shinu.shilesh@its.ny.gov
www.its.ny.gov

**For Official Use Only – Privacy Act Sensitive**. This document is covered by federal and state laws governing electronic communications. It may contain confidential, pre-decisional, and/or sensitive Government information, and is not for release, review, retransmission, dissemination or use by anyone other than the intended recipient. Please consult the original sender before disclosing any information contain herein. If you have received this in error, please reply immediately to the sender and delete this message.

**From:** Erno, Cynthia M (ITS)
**Sent:** Tuesday, March 27, 2018 7:36 AM
**To:** Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
**Cc:** Shilesh, Shinu (ITS) <SHINU.SHILESH@its.ny.gov>
**Subject:** RE: FW: HR Issue

David,

I was very upset when it was written, however, I thought I was being clear, and that Traci was clear, that Evan, yet again, has been loudly vocal again regarding the sexual harassment he put me through.   This is the 5th time. Clearly your just telling him to stop has been completely ineffective.


**Cynthia Erno**
Office of the NYS CTO
Windows Server Patching Team

**Office of Information Technology Services (ITS)**
251 Fuller Rd., Zen Bldg., Albany, NY 12203
(518) 408-5506 cynthia.erno@its.ny.gov
L3 ESSE VULN MGMT ITS   ← Windows Server group ITSM


**From:** Mahoney, David (ITS)
**Sent:** Monday, March 26, 2018 12:08 PM
**To:** Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>
**Cc:** Shilesh, Shinu (ITS) <SHINU.SHILESH@its.ny.gov>
**Subject:** Re: FW: HR Issue


Good Morning Cynthia,


I simply wanted to circle back to your email below.  If you are attempting to identify allegations of sexual harassment in the workplace please contact Shinu Shilesh, ITS' Affirmative Action Officer.


I would be happy to connect with you on the other points you raised.


Thanks,

DM


**From:** Mahoney, David (ITS)
**Sent:** Thursday, March 15, 2018 4:48 PM
**To:** cynmarie@nycap.rr.com; Erno, Cynthia M (ITS); Scalzo, Traci (ITS); Manupella, Anthony (ITS)
**Subject:** Re: FW: HR Issue


Cynthia,


Thank you for your email.  Please give me a call to discuss this further.  I believe there are a host of issues that need to be clarified.

Thanks,

DM


518-473-1891

---

**From:** cynmarie@nycap.rr.com <cynmarie@nycap.rr.com>
**Sent:** Thursday, March 15, 2018 4:06 PM
**To:** Erno, Cynthia M (ITS); Mahoney, David (ITS); Scalzo, Traci (ITS); Manupella, Anthony (ITS)
**Subject:** Re: FW: HR Issue

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.


David,

This is unacceptable and I believe now I am forced to make another complaint against Evan.
He's done everything he can to effectively trash my career and we've told you of almost every instance.
Let me know what I have to do.
It's my understanding I should also be making a police report?
Since my hands are continually forced, I will look into that and any other means for justice.
I'm sincerely fed up with being re-victimized over and over and over again by Evan's behavior and verbal assaults against me and the witness he could identify because the skype conversation was part of the evidence against him. Naturally, he knew who he sent that to. I have been strong and tried to just be me and hoped that my hard work shined more than his continual verbal assaults against my character regarding this situation.  There's only so much one person should have to take, after having been victimized, and I've taken well over my fill.

And for the record, the last I heard on this there was to be a hearing that was calling for his termination and you were going to contact me with details of when and where that would be. You never called with details of that hearing
or anything else regarding where this was headed.

Cynthia Erno
518-461-7723


>
> From: Scalzo, Traci (ITS)
> Sent: Thursday, March 15, 2018 1:57 PM
> To: Erno, Cynthia M (ITS) <Cynthia.Erno@its.ny.gov>; Mahoney, David (ITS) <David.Mahoney@its.ny.gov>
> Subject: HR Issue
>

> David, I reached out to Cynthia today because Evan spoke to me yesterday about the HR issues. Just some background for you. I had been Cynthia's supervisor after Evan was moved to CNSE. I am not aware of details, but Cynthia had to come to me during that time because she was upset and stressed over Evan's involvement with the Patching Team when I took over. I wasn't aware of what was going on and I had been using Evan as a resource. So, the transition was hard on Cynthia at times because I had brought Evan into communications when I needed him. Once she gave me a very high overview of the situation, I stopped including Evan in any discussions directly with the team and Evan.

>

> Evan sits next to me now at Wolf Road. Yesterday, he stood up and turned to me to tell me that he's been vindicated. He said the HR issue has been resolved. He further said that the witnesses wouldn't testify so the whole thing was dropped. Saying the witnesses apparently didn't want to carry on with their lies. So, he said it's all over and he's not going to lose his job, etc. Today, I asked Cynthia if she was ok and let her know what Evan was saying yesterday. She asked that I update you with this information.

>

> Cynthia, I hope that you are alright. I apologize again for not keeping a wall between you and Evan when I first took over the Patching Team. I am glad that you finally came to me and told me as much as you could so that I could do what was necessary. I hope that you are getting all the assistance that you need. There are options available to you.

>

> https://www.timesupnow.com/

## Time's Up Now

**www.timesupnow.com**

The TIME'S UP Legal Defense Fund provides subsidized legal support to those who have experienced sexual harassment, assault, or abuse in the workplace. TIME'S UP.

> https://metoomvmt.org/

## You Are Not Alone



metoomvmt.org

Join the movement to support survivors and end sexual violence.

>
>
> Thank you,
> Traci Scalzo
> Security and Compliance | Data Center Hosting
>
> NYS Office of Information Technology Services
> 50 Wolf Road, 3rd Floor, Albany, NY 12205
> 518-402-6314 | Traci.Scalzo@its.ny.gov<mailto:Traci.Scalzo@its.ny.gov>
> www.its.ny.gov<http://www.its.ny.gov/>

## New York State Office of Information Technology Services

www.its.ny.gov

It is the responsibility of New York State Office of Information Technology Services (ITS) to provide centralized IT services to the State and its governmental entities with the awareness that our citizens are reliant on those services. At ITS, we set statewide technology policy for all state government agencies and monitor all large technology expenditures in the state, seeking efficiencies, lower costs and innovative solutions.

>