**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CYNTHIA MARIE ERNO,**

                              **Plaintiff,**

**v.**                                                    **1:19-CV-1457 (NAM/TWD)**

**NEW YORK STATE OFFICE OF**
**INFORMATION TECHNOLOGY**
**SERVICES,**

                              **Defendant.**

---

**Appearances:**

Cynthia Marie Erno
25 Center Street
Ballston Spa, New York 12020
*Plaintiff Pro Se*

Letitia James, Attorney General of the State of New York
Jorge A. Rodriguez, Assistant Attorney General
The Capitol, Office of the Attorney General
Albany, New York 12224-0341
*Attorneys for Defendant*

**Hon. Norman A. Mordue, Senior United States District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff *pro se* Cynthia Marie Erno brings this action under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*, alleging claims of discrimination, retaliation,

and hostile work environment.  (Dkt. No. 1).  Defendant New York State Office of Information

Technology Services ("ITS") moves under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint

for failure to state a claim.  (Dkt. No. 8).  Plaintiff opposes the motion, and Defendant has

replied.  (Dkt. Nos. 11, 12).  For the reasons that follow, Defendant's motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Plaintiff is currently employed by the Defendant and has been employed by Defendant at all times relevant to the allegations in the Complaint.  (Dkt. No. 1, pp. 13–14).  In April 2018, Plaintiff worked as an Information Technology Specialist III with the Windows Server Patching Group in Defendant's Office of the Chief Technology Officer ("CTO").  (*Id.*, p. 14).  Plaintiff's claims stem from alleged sexual harassment directed at her and others by her former supervisor, Evan Lubin.  (*Id.*).  Plaintiff contends that "[d]uring the time when Lubin worked in the same office as [Plaintiff], he would frequently make sexually explicit jokes and comments." (*Id.*).  Specifically, Plaintiff alleges that "[o]n one occasion, Lubin publicly discussed his spouse's ability to 'give good head,' referring to oral sex."  (*Id.*).  Plaintiff claims that she responded that this comment was unwelcome and offensive, stating, "how can you talk about your wife like that?  That's disgusting."  (*Id.*).  Plaintiff claims that Lubin made this comment in front of her and Lubin's immediate supervisor, and that "no preventative or corrective measures were taken."  (*Id.*, pp. 14–15).

Plaintiff alleges that "[o]n no less than ten (10) occasions, Lubin told an offensive joke wherein a woman was told that that she should show her breasts if she wanted to 'get ahead' in the world, or words to that effect.  While these comments were sometimes made in front of many subordinates, on other occasions it was made directly to [Plaintiff]."  (*Id.*, p. 15).  Plaintiff claims that: "Given Lubin's status as [her] supervisor and the number of times that Lubin told this joke/story, [she] reasonably believed that Lubin was implying that if [she]

---

[1] The facts are taken from the Complaint and documents incorporated by reference and are assumed to be true for the purposes of this decision.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

showed Lubin her breasts, Lubin would see to it that [she] would advance professionally within the office." (*Id.*).

Plaintiff alleges that "on or about February 23, 2017, [her] second line supervisor, Thomas Laney ("Laney"), . . . observed that [she] appeared uneasy around Lubin." (*Id.*). Plaintiff claims that she "detailed to Laney Lubin's egregious and sexually harassing behavior, and further set forth that no corrective or preventative measures had been taken, despite many of the comments being made in front of Lubin's supervisors." (*Id.*). Plaintiff claims that she "expressed concerns about escalating her complaint further because ITS is a male-dominated workplace and she feared retaliation if the matter were escalated." (*Id.*).

Plaintiff alleges that "on or about February 24, 2017," she informed Laney and Sean Patarek, another ITS employee, that "despite her reservations concerning retaliation, she wanted to press forward so that other women were not forced to work in such [a] sexually harassing and hostile workplace." (*Id.*). She claims that she submitted a written statement regarding the harassment to Laney and Patarek on February 27, 2017, and that "they directed [her] to submit the statement to Human Resources (HR)," which she did, and "an investigation followed." (*Id.*).

On April 19, 2017, Affirmative Action Administrator Jaime Benitez emailed Plaintiff the results of the investigation. (Dkt. No. 1, p. 43). In relevant part, that email states:

> This is in response to your complaint filed with ITS in which you alleged, among other things, that you experienced a sexual harassment, hostile environment situation in the workplace.
>
> ITS is committed to all aspects of the principles and practices of affirmative action and equal opportunity employment, including the creation and maintenance of a positive work environment for all agency employees. I have complete[d] the investigation regarding your complaint and have concluded that your allegations of sexual harassment, hostile environment were substantiated. Please be advise[d] that administrative action will be taken to address the situation.

(*Id.*).  According to Plaintiff, "[n]o preventative or corrective measures were taken during the course of the investigation and Lubin remained [her] first-line supervisor during this time period, stationed directly next to [her] desk."  (*Id.*).  Plaintiff further alleges that "[d]uring the period of investigation and for some time thereafter, Lubin maintained a camera on his desk connected to his computer, which [Plaintiff believes] recorded and saved video to his computer."  (*Id.*).  Plaintiff claims that "[t]his camera remained focused on [her] workstation." (*Id.*).

Plaintiff alleges that "on or about April 24, 2017, Lubin began displaying a quote beneath his name in Skype.  The quote appeared to be a variation of the saying 'Revenge is a dish best served cold' . . . ."  (*Id.*).  Plaintiff claims that she "reported this to HR."  (*Id.*). Plaintiff further alleges that "[s]hortly after the investigation concluded, Human Resources employee Dave Mahoney ("Mahoney"), called [her] and encouraged her to accept a position away from her team, and move to a less desirable assignment . . . ."  (*Id.*).  Plaintiff alleges that "[t]his was a transparent attempt to isolate and silo [her]," and that "[f]ollowing [her] refusal, Lubin was ultimately moved to the College of Nanoscale Science and Engineering (CNSE) on the State University of New York (SUNY) campus in May of 2017."  (*Id.*).

Plaintiff alleges that on May 4, 2017, Lubin arrived at ITS' office at 50 Wolf Road and "very loudly stated that he was being forced to move to CNSE because of [Plaintiff]."  (*Id.*). Plaintiff claims that "[she] again reported this to HR," and "[n]o appropriate preventative or corrective measures were taken."  (*Id.*).

Plaintiff asserts that "[d]espite the substantiated sexual harassment complaint, ITS continued to force [her] to work with Lubin.  Indeed, the two were forced to work together frequently even after Lubin moved to CNSE."  (*Id.*, p. 17).  Plaintiff alleges that "on or about May 18, 2017, [she] advised her new supervisor, Traci Scalzo ("Scalzo") . . . about the

substantiated complaint [she] had made against Lubin." (*Id.*). Plaintiff states that "[u]p until this time Scalzo had frequently involved Lubin on projects worked on by [Plaintiff], which caused [Plaintiff] severe emotional distress and discomfort." (*Id.*).

Further, Plaintiff alleges that "on July 14, 2017, the union representing ITS employees . . . held a picnic. Lubin attended this picnic and, upon information and belief, complained to many of the attendees that [Plaintiff] and another employee had lodged a false complaint against Lubin and were attempting to get him fired." (*Id.*). Plaintiff alleges that "[i]n the weeks and months following the picnic, [she] began to find that colleagues who had previously responded to her work requests regularly, were ignoring [her]." (*Id.*).

Plaintiff alleges that "[c]ontinuing through January 2018, [she] continued to be ostracized by her peers and colleagues," and she felt that she was being retaliated against, "and the fears she vocalized to her supervisors and HR when she reported the harassment [ ] fully materialized." (*Id.*). Plaintiff claims that "[t]his retaliatory environment [was] facilitated by Lubin individually, but also [by] ITS through its lack of any disciplinary action against Lubin, and ITS permitting Lubin to publicly call [Plaintiff] a liar." (*Id.*).

Plaintiff claims that "[o]n or about January 16, 2018, during a regular [office] meeting, Rajiv Rao, the Chief Technology Officer, asked the team whether anyone with Active Directory ("AD") experience was willing to assist with a high profile project." (*Id.*). Plaintiff alleges that Rao told the group that "anyone with the relevant experience [who was] willing to assist . . . should contact Manohar Mathan." (*Id.*). Plaintiff alleges that she "promptly contacted Mathan via email and detailed her extensive experience with AD." (*Id.*, pp. 17–18). Plaintiff alleges that "Mathan wrote back and stated, in pertinent part, '[y]our technical background matches exactly what we are looking for. Let's chat this week and I can go over details on what we do.'" (*Id.*). Plaintiff alleges that "[w]hile [she] responded two (2) minutes

later that she could meet at Mathan's convenience, Mathan never responded further and broke off any further communications with [her]." (*Id.*, p. 18).

Plaintiff alleges that "on March 15, 2018, Lubin announced to the employees at ITS' 50 Wolf Road location that he had been 'vindicated' and 'the charges have been dropped.'" (*Id.*). Plaintiff claims that "Lubin further stated that all of the 'witnesses,' referring to [Plaintiff], were 'lying' and that they 'didn't want to carry on with their lies.'" (*Id.*).  Plaintiff alleges that she "immediately began to experience extreme distress and felt like she had been punched in the stomach." (*Id.*).

Plaintiff claims that "[she] immediately emailed Mahoney, and again complained of ongoing retaliation and sexual harassment, stating that she continued to be 're-victimized over and over again by Lubin.'" (*Id.*).  Plaintiff alleges that "Mahoney responded that day and stated, 'Thank you for your email.  Please give me a call to discuss this further.  I believe there are a host of issues that need to be clarified.'" (*Id.*, pp. 18, 82).  Plaintiff claims that she called Mahoney but did not receive a return call.  (*Id.*).  Plaintiff alleges that "she was forced to leave work due to the physical sickness and emotional distress she was experiencing," and [she] was also unable to work the next workday, Monday, March 19, 2018." (*Id.*).

On March 26, 2018, Mahoney sent Plaintiff a follow-up email stating that:

> If you are attempting to identify allegations of sexual harassment in the workplace please contact Shinu Shilesh, ITS' Affirmative Action Officer.
>
> I would be happy to connect with you on the other points you raised.

(*Id.*, p. 82).  Plaintiff responded by email, stating:

> I was very upset when [my initial report] was written, however, I thought I was being clear, . . . that [Lubin], yet again, has been loudly vocal . . . regarding the sexual harassment he put me through.  This is the 5th time.  Clearly your just telling him to stop has been completely ineffective.

(*Id.*).  Plaintiff claims that "[Defendant] took no appropriate preventative or corrective measures."  (*Id.*, p. 18).

On April 30, 2018, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC").  (*Id.*, pp. 4, 44).  On August 28, 2019, the EEOC issued a decision dismissing Plaintiff's claim of unlawful retaliation.  (*Id.*, pp. 10–11).  The EEOC's notice of dismissal states that it was "unable to conclude that the information obtained establishes violations of the statutes."  (*Id.*, p. 11).  The EEOC further noted that "[ITS] moved and disciplined the alleged harasser following [Plaintiff's] complaints," and that "[t]here is no evidence that [Plaintiff was] subjected to different terms and conditions of employment."  (*Id.*, pp. 10–11).  Plaintiff commenced this action on November 25, 2019.  (*See generally* Dkt. No. 1-1).

## III.   STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"  *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  In considering a motion to dismiss under Rule 12(b)(6), the court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

The Second Circuit has instructed that where "the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  Courts "must view [*pro se*] submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  Accordingly, "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable [ ] cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008).

## IV.    DISCUSSION

Plaintiff appears to assert three claims under Title VII and NYSHRL: (1) gender discrimination (disparate treatment); (2) hostile work environment; and (3) retaliation.  (Dkt. No. 1, pp. 1–23).  Defendant moves to dismiss the Complaint on the basis that: (1) Plaintiff's claims are time-barred as to any alleged adverse actions that occurred 300 days before she filed charges with the EEOC; and (2) Plaintiff fails to allege sufficient facts to support her claims. (*See generally* Dkt. No. 8-1).

### A.   Timeliness of Claims

As an initial matter, "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)).  "The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint will bar a

plaintiff's action." *Boza–Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 545 (W.D.N.Y. 2016) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)).  In this context, the word "practice" refers to "a discrete act or single occurrence," meaning that a "a discrete retaliatory or discriminatory act occurred on the day that it happened." *Vega*, 801 F.3d at 79 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002)) (internal quotations omitted).  And "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Morgan*, 536 U.S. at 113.

One exception to the 300-day limitation period is the "continuing violation doctrine," which may apply "if a plaintiff has experienced a continuous practice and policy of discrimination." *Washington v. Cty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).  "A continuing violation may be found where there is proof of specific ongoing discriminatory [policies] or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Little v. Nat'l Broad. Co., Inc.*, 210 F. Supp. 2d 330, 336 (S.D.N.Y. 2002) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).  Courts must "make an individualized assessment of whether incidents and episodes are related" in order to determine whether any associated incidents or episodes occurred within the limitations period. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76–77 (2d Cir. 2010).

Here, Plaintiff alleges that Defendant's discriminatory and/or retaliatory conduct began sometime before February 2017 and continued through at least February 2019.  (*See* Dkt. No. 1, pp. 3–7, 14–18).  Plaintiff filed her EEOC charge on April 30, 2018, and therefore, any conduct alleged to have occurred before July 4, 2017 (300 days prior to the EEOC charge) is

generally time-barred, and thus should not be considered in support of Plaintiff's claims.  The Court's analysis will assess the timeliness of each claim.

## B.  Discrimination

Title VII prohibits an employer from "taking an adverse employment action" against an individual "because of such individual's race, color, religion, sex, or national origin." *Vega*, 801 F.3d at 85 (quoting 42 U.S.C. § 2000e–2(a)(1)).  To survive a motion to dismiss, a gender discrimination claim "must plausibly allege that (1) the employer took adverse action against [the plaintiff;] and (2) [the plaintiff's] sex was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86.[2]  This burden is "minimal." *Id.*

### 1.  Timeliness

Plaintiff's gender discrimination claim hinges on the allegation that in January 2018 she was wrongfully denied assignment to a "high profile project" that could have led to "significant career advancement." (Dkt. No. 1, pp. 3, 17–19).  This claim is timely because the alleged adverse action falls within the 300-day limitation period between April 30, 2018 and July 4, 2017.

### 2.  Elements of Claim

Defendant argues that Plaintiff's gender discrimination claim must be dismissed because she has not alleged an adverse employment action or discriminatory intent.  (*See* Dkt. No. 8-1, pp. 8–12).  Specifically, Defendant asserts that "Plaintiff is still employed with Defendant and has not alleged that she has been demoted, that her salary has been reduced or that there have been any other negative change[s] in the terms of her employment." (*Id.*, p.

---

[2]  The analysis for gender discrimination claims under NYHRL is generally identical.  *See Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n. 9 (2d Cir. 2008) ("We typically treat Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims.").

10).  Defendant contends that its failure to select her for a temporary part-time work assignment "did not materially diminish the terms of employment . . . to constitute [an] adverse action."  (*Id.*, p. 11).  And Defendant also claims that, even if the alleged actions were adverse, Plaintiff fails to allege any facts supporting a conclusion that its actions were motivated by any discriminatory intent.  (*Id.*, pp. 11–12).

### a.  Adverse Employment Action

An adverse employment action is "a materially adverse change in the terms and conditions of employment."  *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  Such a change generally "include[s] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Id.*  Adverse actions have also been interpreted to include "the denial of professional training opportunities . . . , but only where an employee can show material harm from the denial, such as a failure to promote or loss of career advancement opportunities."  *Trachtenburg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

Here, Plaintiff alleges that she was denied the opportunity "to assist with a high profile project," which is essentially a claim that she was denied training or advancement opportunities.  (Dkt. No. 1, pp. 17–19).  Specifically, Plaintiff claims that she did not get the assignment despite her interest, qualifications, and communications with the project's supervisor.  (*Id.*, pp. 17–18).

Even accepting these allegations as true, they are not sufficient to plausibly allege an

adverse employment action by Defendant.  Courts in this Circuit have frequently held that

"[t]he fact that an employee does not receive a desired or requested employment assignment

alone does not constitute adverse action."  *Kane v. City of Ithaca*, No. 18-CV-0074, 2018 WL

3730172, at *6, 2018 U.S. Dist. LEXIS 131457, at *16–17 (N.D.N.Y. Aug. 6, 2018) (collecting

cases).  Notably, there is no allegation that Plaintiff's employment conditions were affected

when she did not get the desired assignment.  Nor does Plaintiff allege any facts to support her

speculation that the assignment *could* have led to career advancement opportunities.  Indeed,

Plaintiff does not allege that her assignment to that position would have brought about any

material change in her employment, such as a change in title, level of responsibility, or

compensation.  (*Id.*).

Accordingly, Plaintiff's allegations that she was denied a desired assignment do not

plausibly allege an adverse employment action to support her gender discrimination claim.  *See*

*Bright v. LeMoyne Coll.*, 306 F. Supp. 2d 244, 254 (N.D.N.Y. 2004) (assignment to a different

shift than the one requested was not an adverse employment action); *Ruggieri v. Harrington*,

146 F. Supp. 2d 202, 217 (E.D.N.Y. 2001) (plaintiff "suffered no adverse employment action

as a result of being denied the occasion to serve as department chair and to teach certain

summer courses that she wanted to teach"); *see also Rodriguez v. Glen Cove City Sch. Dist.*,

No. 14-CV-3815, 2016 WL 951524, at *4, 2016 U.S. Dist. LEXIS 30003, at *10–11 (E.D.N.Y.

Mar. 8, 2016) (defendant's failure to assign the plaintiff to her desired teaching assignment

"was not a material change in the terms and conditions of her employment").

### b.  Discriminatory Intent

Further, Plaintiff also fails to state a gender discrimination claim because her allegations

do not plausibly suggest an inference of discriminatory intent.  In order to satisfy her burden at

the pleading stage, a plaintiff must allege facts from which "discriminatory motivation may be inferred." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). Such allegations may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus. *See id.*

Here, Plaintiff appears to allege gender animus on the basis that her male colleagues received more favorable treatment. (Dkt. No. 1, pp. 19, 21–22). However, Plaintiff does not allege any facts to support this theory. Indeed, there is no allegation that the desired project was assigned to a man, so the Court cannot infer that Plaintiff was treated differently because of her gender. Further, there is no allegation that the supervisor in charge of the project had any involvement or connection to the harassment and retaliation alleged by Plaintiff, so the Court cannot infer that the supervisor's decision was motivated by gender animus. Accordingly, Plaintiff's gender discrimination claim (under both Title VII and NYHRL) must also be dismissed because her allegations fail to support a plausible inference of discriminatory intent based on gender. *See Frederick v. United Bhd of Carpenters*, 665 F. App'x 31, 33 (2d Cir. 2016) (affirming dismissal of Title VII discrimination claim because the plaintiff alleged no facts suggesting she was denied promotion for reasons relating to her protected class); *see also Khaleel v. Swissport USA, Inc.*, No. 15-CV-4880, 2015 WL 5307733, at *2, 2015 U.S. Dist. LEXIS 120615, at *5–6 (E.D.N.Y. Sept. 10, 2015) (dismissing discrimination claim pursuant to Title VII because "[e]ven under the most liberal interpretation of [the plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status").

## C.     Hostile Work Environment

In order to allege a hostile work environment claim under Title VII, a plaintiff must allege facts to plausibly "show that 'the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Gorzynski*, 596 F.3d at 102 (quoting *Alfano*, 294 F.3d at 374). The hostile work environment standard "includes both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

"Whereas [ ] disparate treatment claims may scrutinize discrete harms such as hiring or discharge, a hostile work environment claim analyzes a workplace environment as a whole to discover whether it is 'abusive.'" *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) (citing *Harris v. Forklift*, 510 U.S. 17, 22 (1993)). Indeed, the "very nature [of a hostile work environment claim] involves repeated conduct," which does not occur on a particular day, but rather "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing *Morgan*, 536 U.S. at 115). "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee

would find the conditions of her employment altered for the worse,' and '[the Second Circuit] ha[s] repeatedly cautioned against setting the bar too high' in this context."  *Patane*, 508 F.3d at 113 (quoting *Terry*, 336 F.3d at 148).

### 1.   Timeliness

Here, Defendant claims that any unlawful conduct alleged to have occurred before July 4, 2017 is time-barred.  (Dkt. No. 8-1, pp. 16–17).  Indeed, the majority of the alleged incidents supporting Plaintiff's hostile work environment claim fall outside of the 300-day limitations period preceding her EEOC Charge on April 30, 2018.  (*See* Dkt. No. 1, pp. 3, 14–15). However, the Court must still consider whether Plaintiff's claim is subject to the continuing violation exception, as discussed above.  To bring a hostile work environment claim "within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004); *see also Baroor v. N.Y. City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (stating that "a hostile work environment claim is treated as a continuing violation and treated as timely if one act contributing to the claim occurred within the 300-day period").

Moreover, "[a]lthough the continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination, and although acts so isolated in time from each other or from the timely allegations as to break the asserted continuum of discrimination will not suffice, a continuing violation may be found where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001).

Liberally construed, Plaintiff's Complaint alleges *some* conduct within 300-days of her EEOC charge that relates to her hostile environment claim, including: (1) Lubin's statements to co-workers at an office picnic alleging that Plaintiff was "trying to get him fired"; (2) her non-assignment to the "high profile" special project; and (3) Lubin's statements to co-workers that Plaintiff and her witnesses were lying about the harassment allegations.  (Dkt. No. 1, pp. 3–4, 17–18).  These alleged incidents are sufficient at this stage to bring Plaintiff's hostile work environment claim within the continuing violation exception because they appear to be part of a continuing pattern of alleged unlawful conduct by Defendant and Lubin.  As such, the Court will consider all of Plaintiff's allegations in evaluating her hostile work environment claim, including, *inter alia*, the totality of Lubin's alleged statements and conduct, and Defendant's alleged failure to intervene.  *See McMahon v. Tompkins Cty., N.Y.*, No. 16-CV-922, 2017 WL 4443884, at *9–10, 2017 U.S. Dist. LEXIS 164719, at *25 (N.D.N.Y. Oct. 4, 2017) (finding that otherwise time-barred conduct related to a hostile work environment claim could be considered under the continuing violation exception "if [at least] one act contributing to the claim occurred within the 300-day period").[3]

## 2.   Elements of Claim

Defendant further argues that Plaintiff's allegations are not sufficient to state a hostile work environment claim.  (Dkt. No. 8-1, pp. 14–16).  Specifically, Defendant contends that the "isolated" incidents alleged by Plaintiff "do not rise to the level of pervasively abusive and hostile" work environment.  (*Id.*, p. 16).  In response, Plaintiff contends that she suffered from "continual retaliation" which created a "hostile environment for [her]."  (Dkt. No. 11, p. 2).

---

[3] The Court's decision to deny Defendant's statute of limitations arguments is without prejudice to renew this defense in a motion for summary judgment.  *See Almasmary v. City of New York*, No. 07–CV–1868, 2009 WL 914693, at *9, 2009 U.S. Dist. LEXIS 27435, at *23 (E.D.N.Y. Mar. 31, 2009) (denying the defendants' motion to dismiss "without prejudice . . . to renew these motions upon summary judgment if defendants can develop proof to substantiate their statute-of-limitations defenses").

Plaintiff asserts that she "just wanted [Lubin's] behavior to stop and [Defendant] could not or would not do it," and "time after time, nothing effective was being done to stop the retaliation." (*Id.*, p. 3).

Taking Plaintiff's allegations as true, she witnessed her supervisor Lubin repeatedly make crude sexist jokes and comments which she found disgusting and offensive. (Dkt. No. 1, pp. 14–15). Plaintiff claims that Lubin repeatedly told one joke which implied "that if [she] showed [him] her breasts, [he] would see to it that [she] would advance professionally within the office." (*Id.*, p. 15). Plaintiff further alleges that she reported Lubin's conduct to Defendant's HR department, but "no preventative measures were taken during the course of the investigation and Lubin remained [her] first-line supervisor during the [investigative] period." (*Id*, pp. 3, 15–16). While the investigation was pending, Plaintiff claims that Lubin set up a camera at his desk that "remained focused on [Plaintiff's] workstation," and allegedly "recorded and saved video to his computer." (*Id.*).

On April 18, 2017, Plaintiff claims that HR concluded that her "allegations of sexual harassment [and] hostile environment were substantiated," and advised her that "administrative action would be taken." (*Id.*, p. 16). Shortly thereafter, Plaintiff alleges that Lubin began displaying a quote beneath his name in the Skype computer program, which appeared to be a veiled threat towards Plaintiff. (*Id.*, pp. 3, 16). Lubin also allegedly made "very loud[]" statements to Plaintiff's office coworkers that he was being forced to move [work assignments] because of [Plaintiff]," and that Plaintiff was lying and "trying to get him fired." (*Id.*, pp. 3–4, 16–18). Plaintiff claims that she was forced to work with Lubin even after his move to a different office, and that she was also "ostracized by her peers and colleagues." (*Id.*, p. 17). She claims the Defendant denied her an assignment to a high profile project in retaliation for her complaints about Lubin's conduct. (*Id.*, pp. 3, 17–18). She claims this conduct caused her

"severe emotional distress," "discomfort," and, on one occasion, caused her to leave work early and stay home the next day. (*See id.*, pp. 17–18).

Considered in totality, the Court finds that the facts alleged by Plaintiff are sufficient to state a hostile work environment claim based on her gender. The Second Circuit has stated that "the depiction of women [in] offensive jokes [that are] uniformly sexually demeaning [toward women]" are "particularly insulting . . . because [they] cast women in a demeaning role: as objects of sex-based ridicule and subjects for sexual exploitation." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 222 (2d Cir. 2004). Although some of Plaintiff's allegations sound in retaliation, liberally construing the Complaint and drawing all reasonable inferences in her favor, there are sufficient facts to state a gender-driven hostile work environment claim based on Plaintiff's allegations that she was subjected to repeated sexist jokes, that Lubin trained a camera on her workstation, and she was forced to work with Lubin even after complaining to HR. Indeed, her claim suggests a pattern of sexually harassing and intimidating conduct by Lubin and inaction and indifference by Defendant such that a reasonable employee in Plaintiff's position would feel that the conditions of her employment had changed for the worse. These facts are also sufficient to impute Lubin's conduct to Defendant. Ultimately, "[t]he question of whether a work environment is *sufficiently* hostile to violate Title VII is one of fact," and therefore, the Court declines to decide it at this stage. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) (emphasis added). Accordingly, Defendant's motion to dismiss Plaintiff's hostile work environment claim is denied.

### D.    Retaliation

Finally, Defendant argues that Plaintiff's retaliation claim must be dismissed because she "has failed to allege that she suffered an adverse employment action or that any adverse action was a result of Plaintiff engaging in a protected activity." (Dkt. No. 8-1, pp. 12–14).

"Title VII forbids an employer to retaliate against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006); *see also* 42 U.S.C. § 2000e–3(a). In order for a Title VII retaliation claim to survive a motion to dismiss, a plaintiff must allege facts to show that the defendant took an adverse action against plaintiff *because of* plaintiff's protected activity of opposing or complaining about discrimination. *See Vega*, 801 F.3d at 90.[4] In the retaliation context, the "adverse action" requirement means "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII." *Id.*

Further, the causal connection "can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotation marks omitted). And an employer's creation of a retaliatory hostile work environment may constitute an "adverse employment action" for purposes of a retaliation claim. *See Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 392 (S.D.N.Y. 2019) (citing *Marquez v. City of New York*, No. 14-CV-8185, 2016 WL 4767577, at *13, 2016 U.S. Dist. LEXIS 123897, at *43–44 (S.D.N.Y. Sept. 12, 2016)).

---

[4] The elements for a prima facie case of retaliation under Title VII and NYSHRL are the same. *See Pellegrini v. Sovereign Hotels, Inc.*, 740 F. Supp. 2d 344, 354 (N.D.N.Y. 2010); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard.").

19

Here, Plaintiff has plausibly alleged that she engaged in protected activity on or around February 27, 2017 when she submitted a written complaint to HR about Lubin's comments and behavior.  *See Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 239 (N.D.N.Y. 2010) (noting that "[i]nternal or informal complaints of discrimination on a basis prohibited by Title VII are protected activity").  Further, Plaintiff alleges that she was subjected to a retaliatory hostile work environment shortly after filing her complaint with HR, which included: (1) Lubin's use of Skype to make a veiled threat against Plaintiff for her reporting of his conduct; (2) Lubin's negative and degrading comments about Plaintiff's credibility and motives for filing complaints against him; (3) Lubin's repeated misrepresentation of the outcome of the sexual harassment investigation to other employees; (4) Defendant's indifference towards Plaintiff's allegations and continued assignment of Plaintiff to the same projects as Lubin; and (5) Defendant's failure to prevent Lubin from harassing Plaintiff further.  (Dkt. No. 1, pp. 3–8, 13–23).

These facts are sufficient to allege a retaliatory hostile work environment at this stage, particularly given the temporal proximity between the protected activity and alleged hostility. (*See* Dkt. No. 1, pp. 3–4, 14–18, 20–23).  Therefore, Defendant's motion to dismiss Plaintiff's retaliation claims (under both Title VII and NYHRL) is denied.[5]  *See Czerwinski v. N.Y. Dep't of Corrs. and Cmty. Supervision*, 394 F. Supp. 3d 210, 222–25 (N.D.N.Y. 2019) ("Whether a retaliatory hostile work environment existed, whether it was causally connected to any of the potential protected activities, and whether it continued into the limitations period, are issues that are better addressed after discovery.").

---

[5] For purposes of this decision only, the Court assumes that Plaintiff's retaliatory hostile work environment claims are timely under the continuing violation doctrine, as discussed above.

**V.    CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 8) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendant's motion to dismiss as to Plaintiff's gender discrimination (disparate treatment) claims under Title VII and NYHRL is **GRANTED**; and it is further

**ORDERED** that Defendant's motion to dismiss as to Plaintiff's hostile work environment and retaliation claims is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is directed to provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Dated:  May 26, 2020
            Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge