**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CYNTHIA MARIE ERNO,**

                    **Plaintiff,**

**v.**                                                          **1:19-CV-1457 (NAM/TWD)**

**NEW YORK STATE OFFICE OF**
**INFORMATION TECHNOLOGY**
**SERVICES,**

                    **Defendant.**

_____

**Appearances:**

David A. Fallon
1525 Western Avenue
Albany, New York 12203
_Attorney for Plaintiff_

Jorge A. Rodriguez
Office of the Attorney General
Albany, New York 12224-0341
_Attorney for Defendant_

**Hon. Norman A. Mordue, Senior United States District Judge**

### MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

       Plaintiff Cynthia Marie Erno brings this action under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e _et seq._, and the New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 296 _et seq._, alleging claims of retaliation and hostile work environment.

(Dkt. No. 1).  Defendant New York State Office of Information Technology Services ("ITS")

now moves for summary judgment.  (Dkt. No. 44).  Plaintiff opposes the motion, and Defendant

has replied. (Dkt. Nos. 47, 50). For the reasons that follow, Defendant's motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Defendant ITS is a New York State executive agency tasked with providing centralized information technology services to the State and its governmental entities. (Dkt. No. 44-8, ¶ 1). At all relevant times, Plaintiff was employed as an Information Technology Specialist with ITS. (*Id.*, ¶ 2). Starting around 2015, Plaintiff's direct supervisor was Evan Lubin. (Dkt. No. 47-1, p. 2). According to Plaintiff, Lubin repeatedly told her the following story:

> [H]e and his wife and another couple were having dinner and the subject came up on whether or not it would be appropriate for women to show their breasts to their boss if they wanted to get things done at work. The story concludes that both of the couples came away from that dinner meeting thinking 'yes, it was okay if the wives did that.'

(*Id.*, p. 3). Plaintiff states that Lubin told this story in her presence at least eight to ten times from 2015 to early 2017, both in group settings and when they were alone in the office. (*Id.*).

According to Plaintiff, the final time Lubin told the story, she stated something like "not going to happen," but he continued telling the story. (*Id.*, p. 4). Plaintiff states that "it became absolutely obvious and clear to me that Mr. Lubin was telling me that I should show him my breasts if I wanted to push a process or project forward within our unit." (*Id.*). The experience left her feeling "disgusted, angry and frustrated." (*Id.*).

According to Lubin, the alleged story was just an anecdote about how a friend of his had coined the term "breasting," which Lubin defined as a woman pushing "her chest forward to try

---

[1] The facts have been drawn from Defendant's Statement of Undisputed Facts (Dkt. No. 44-8), Plaintiff's Response & Statement of Additional Material Facts, (Dkt. No. 47-20), Defendant's Response to Plaintiff's Statement of Additional Material Facts, (Dkt. No. 50-4), and the parties' attached exhibits to the extent that they are in admissible form.

to draw attention to herself and get what she was asking for." (Dkt. No. 44-6, p. 18). Lubin testified that he only told this story once at work. (*Id.*).

Plaintiff states that Lubin also "constantly" discussed his wife's breasts in front of her. (Dkt. No. 47-1, p. 4). Lubin "would talk about their size, and the especially big bras that had to be purchased to accommodate them." (*Id.*). On another occasion in early 2017, Plaintiff walked into a meeting where Lubin was allegedly "discussing his wife's talents for oral sex." (*Id.*). Lubin continued telling the story in her presence. (*Id.*). On the other hand, Lubin testified that he did not make comments about his wife's breasts, but only about her bras, because they were expensive. (Dkt. No. 44-6, pp. 23–24).

On February 27, 2017, Plaintiff filed an internal complaint of discrimination, alleging that Lubin sexually harassed her by repeating the "breasting" story at least 8–10 times, possibly suggesting that she use her body to get ahead at work. (Dkt. No. 44-2, pp. 47–51). In response, ITS immediately opened an investigation, led by Jaime Benitez and David Mahoney. (Dkt. No. 44-8, ¶ 14). Benitez interviewed Plaintiff and Lubin, as well as another employee Anthony Manupella, who corroborated Plaintiff's allegations. (Dkt. No. 44-2, pp. 53–55).

Plaintiff states that during the investigation she noticed that Lubin had begun pointing a web camera at her workstation, and she complained to the investigators. (Dkt. No. 47-1, p. 6). Lubin testified that the camera was not pointed directly at Plaintiff, and it was set up at the request of another employee before Plaintiff filed her complaint. (Dkt. No. 44-6, pp. 64–66). On March 28, 2017, Lubin admitted that the camera was not authorized by ITS, and Mahoney directed Lubin to remove it from his workstation. (Dkt. No. 44-2, pp. 85, 92).

On or about April 7, 2017, the investigation concluded that Plaintiff's claims were substantiated and recommended that administrative action be taken against Lubin. (Dkt. No. 44-8, ¶ 27). The matter was then referred to Labor Relations for disciplinary proceedings

against Lubin.  (*Id.*, ¶ 28).  According to Plaintiff, ITS offered to move her work site to a different building, but she opted to remain with her unit.  (Dkt. No. 47-1, p. 7).  ITS removed Lubin from Plaintiff's chain of command and relocated him to another part of the building, and shortly thereafter, to another building.  (Dkt. No. 44-8, ¶ 32).

On April 24, 2017, Plaintiff noticed that Lubin's Skype messaging account profile listed a quote from Star Trek in the native tongue of the Klingon, translated as "change of state is a dish which is best served cold."  (Dkt. No. 47-1, p. 7).  Plaintiff believed that the Klingon quote referenced revenge and was meant to intimidate her.  (*Id.*).  That same day, Plaintiff sent an email to Mahoney complaining that: 1) Lubin was still listed as her supervisor in the ITS software used to track employees' work time; 2) Lubin was continuing to have contact with her by sending emails to her work group; and 3) Lubin's Skype handle contained an intimidating Klingon quote about revenge.  (Dkt. No. 44-2, pp. 130–31).

In response to Plaintiff's email, Mahoney provided instructions to Plaintiff to have Lubin removed as her supervisor in the timekeeping system and made arrangements to have Lubin removed from the work group email list.  (Dkt. No. 44-8, ¶ 56).  Mahoney also directed supervisory staff in Plaintiff's work group to prevent any contact between Plaintiff and Lubin.  (*Id.*, ¶ 57).  On May 1, 2017, Mahoney directed Lubin to remove the offending Klingon quote from his Skype account and Lubin did so.  (*Id.*, ¶¶ 61–62).

On May 4, 2017, Plaintiff emailed Mahoney that she had heard from another employee, Charles Slyer, that Lubin was complaining about being forced to move offices because of her.  (Dkt. No. 47-1, pp. 21–22).  On May 18, 2017, Plaintiff informed Mahoney that she continued to receive emails from Lubin directed at her work group.  (Dkt. No. 44-8, ¶ 63).  In response, Mahoney notified Plaintiff the next day that ITS was removing Lubin from her work group

email list.  (*Id.*, ¶ 64).  ITS also directed Lubin to cease all communication with the work group and channel all communication through Traci Scalzo, Plaintiff's new supervisor.  (*Id.*, ¶ 65).

On July 5, 2017, ITS issued Lubin a Notice of Discipline ("NOD") based on Plaintiff's substantiated allegations of sexual harassment, specifically that he "discussed the size of [his] wife's breasts in the workplace; made sexually oriented comments and/or jokes in the presence of a co-worker and/or a subordinate in the workplace; and connected an unapproved electronic device to state resources."  (Dkt. No. 44-2, pp. 107–110).  The NOD sought to terminate Lubin's employment.  (*Id.*).  In response, Lubin filed a grievance through his union disputing the NOD, and he demanded arbitration.  (Dkt. No. 44-8, ¶ 45).

On August 14, 2017, Plaintiff sent another email complaining that she had heard that Lubin was badmouthing her to colleagues at a union picnic, saying that Plaintiff was trying to get him fired.  (Dkt. No. 44-2, p. 135).  Lubin testified that he did not complain about Plaintiff at the picnic.  (Dkt. No. 44-4, p. 27).  On September 6, 2017, Plaintiff sent another email claiming that Lubin had caused other employees at ITS to shun her and not return her emails.  (Dkt. No. 44-2, p. 140).  She said that "the only reason I can see that I would be shunned would be because Evan is continually opening his mouth."  (*Id.*).

On February 8, 2018, ITS agreed to a Stipulation of Settlement with Lubin which resolved the NOD initiated by Plaintiff's complaint.  (Dkt. No. 44-2, pp. 124–27).  The Stipulation provided that Lubin would forfeit 10 days of accrued time and undergo a Disciplinary Evaluation Period, but there was no admission of guilt by Lubin.  (*Id.*).

On March 15, 2018, Plaintiff sent another email to Mahoney and others, alleging that she had heard from Traci Scalzo that Lubin was continuing to badmouth her by saying that she had lied and that he was vindicated.  (Dkt. No. 44-2, pp. 146–47).  She did so again on March 27, 2018.  (*Id.*, p. 145).  Scalzo testified that she remembered Lubin "talking about how he was

vindicated and felt the witnesses didn't want to carry on with their lies." (Dkt. No. 47-13, p. 7).

Mahoney states that he contacted Lubin and reminded him of his obligation to comply with the

ITS Rules. (Dkt. No. 44-1, p. 12). Mahoney also encouraged Plaintiff to meet with the

Affirmative Action Officer to discuss any potential claims of sexual harassment by Lubin. (*Id.*).

On or about April 26, 2018, Plaintiff filed through her attorney a Charge of

Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"),

alleging sex discrimination, retaliation, and hostile work environment under Title VII and the

NYSHRL. (Dkt. No. 44-2, pp. 152–63). Plaintiff alleged that Lubin frequently made explicit

jokes and comments; that on one occasion Lubin discussed his wife's prowess for oral sex; and

Plaintiff recounted the "breasting" story. (*Id.*). Plaintiff also complained about the web camera,

the Klingon quote, and Lubin's alleged comments at the picnic. (*Id.*). Plaintiff alleged that

Lubin's harassment and retaliation was facilitated by ITS through its lack of disciplinary action

against him. (*Id.*). Plaintiff also alleged that co-workers had shunned her and she had been

denied a high-profile assignment. (*Id.*).

In response to the EEOC Complaint, ITS opened an investigation into Lubin's conduct,

and on July 26, 2018, Lubin was placed on an interim suspension without pay because ITS

found probable cause that his "continued presence on the job represents a potential danger to

persons or property or would severely interfere with operations." (Dkt. No. 44-4, p. 38). ITS

informed Lubin that it would be filing disciplinary charges against him, and Lubin was

forbidden to enter ITS property without prior approval. (*Id.*).

On August 14, 2018, the Affirmative Action Officer issued a draft investigation report

regarding Plaintiff's claims in the EEOC Complaint. (Dkt. No. 44-4, pp. 41–46). The report

concluded that Plaintiff's claim of retaliation was not substantiated because she was not denied

an opportunity with ITS in retaliation for having submitted a complaint against Lubin. (*Id.*).

But the report concluded that "the frequency and the severity of [Mr. Lubin's] comments are enough to dissuade a reasonable person from making or supporting a charge of discrimination," and that "Lubin's actions have created an intimidating, hostile and offensive work environment. (*Id.*).  Therefore, the report found that Plaintiff's allegation of sex discrimination/hostile work environment was substantiated.  (*Id.*).  The report recommended that administrative action be taken against Lubin.  (*Id.*).

On July 31, 2018, ITS issued Lubin a second NOD based on charges that he discussed the first NOD and associated investigation with other ITS employees despite explicit instructions by Defendant to not do so.  (Dkt. No. 44-4, pp. 94–96).  The second NOD sought Lubin's dismissal from State service and attendant loss of benefits.  (*Id.*).  In response, Lubin again filed a grievance and demanded arbitration.  (*Id.*, pp. 98–101).  At the arbitration on February 8, 2019, the charges in the second NOD were dismissed based on an email from ITS that explicitly permitted Lubin to discuss the first NOD and investigation.  (*Id.*, pp. 107–10). Lubin was restored to his position with ITS.  (*Id.*).

## III.    STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250.  Further, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp*., 352 F.3d 775, 780 (2d Cir. 2003).

## IV.   DISCUSSION

Plaintiff has two remaining claims made pursuant to Title VII and the NYSHRL: 1) hostile work environment based on gender; and 2) retaliation.  Defendant argues that Plaintiff cannot establish the elements of either claim.

### A.   Hostile Work Environment

#### 1.   Applicable Law

In order to establish a hostile work environment claim under Title VII or the NYSHRL, a plaintiff must "show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)).  "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  "Generally, unless an incident of harassment is

sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Gorzynski*, 596 F.3d at 102 (quoting *Alfano*, 294 F.3d at 374).  The hostile work environment standard "includes both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Rasparado v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).  "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).

Further, an employer is not automatically liable for such a claim; rather, a plaintiff must show some basis for imputing the existence of the hostile work environment to the employer. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  As relevant here, an employer will be liable for a hostile work environment under Title VII when the employer knows about the hostile work environment but fails to take appropriate remedial steps to address it.  *See Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009).  The Court analyzes whether an employer's remedial actions were sufficient based on the totality of the circumstances.  *Id.* (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998)).  The standard for imputing liability to an employer is higher under the NYSHRL, however, and an employer cannot be held liable for an employee's discriminatory act "unless the employer became a party to it by encouraging, condoning, or approving it." *Durkin v. Verizon New York, Inc.*, 678 F. Supp. 2d 124, 136 (S.D.N.Y. 2009) (citation omitted).

### 2.    Analysis

Defendant argues that Plaintiff's hostile work environment claim must fail because the alleged conduct is either time-barred, not sufficiently severe and pervasive, unrelated to Plaintiff's gender, and/or cannot be imputed to Defendant.  (Dkt. No. 44-9, pp. 6–16).

### a.    Hostile Conduct Related to Plaintiff's Gender

As an initial matter, the parties dispute whether conduct from before July 4, 2017 should be considered for Plaintiff's claim.  The record shows that Plaintiff filed her EEOC charge on April 30, 2018, and therefore, any conduct alleged to have occurred before July 4, 2017 (300 days prior to the EEOC charge) ordinarily cannot be considered in support of Plaintiff's claim. (*See* Dkt. No. 14, pp. 9–10) (citing cases).  However, this otherwise time-barred conduct can be considered if Plaintiff shows that it is part of a continuing pattern or practice, i.e., by pointing to at least one act contributing to the claim that occurred within the 300-day period.  (*Id.*, pp. 15–16) (citing cases).

Here, Plaintiff argues that "all of the examples of harassment" should be considered as part of her hostile work environment claim.  (Dkt. No. 47-21, pp. 8–9).  Most of the examples occurred before July 4, 2017, including Lubin's alleged comments and stories about breasts and "breasting."  But Plaintiff also cites examples that occurred thereafter, including comments Lubin made to others accusing Plaintiff of being a liar.  For example, Traci Scalzo testified that on March 15, 2018, Lubin told her that he had been vindicated and that Plaintiff's allegations were lies.[2]  (Dkt. No. 47-13, p. 7).  Plaintiff felt that these comments "re-victimized" her, effectively re-opening the wound of the original sexual harassment.  (Dkt. No. 47-1, p. 31). Viewing the facts in the light most favorable to Plaintiff, the Court finds that Lubin's later comments could be seen as part of a continuing pattern of harassment based on gender. Therefore, the Court will review the totality of the circumstances, including incidents from both before and after July 4, 2017, in assessing Plaintiff's hostile work environment claim.

---

[2] Although Defendant correctly points out that Lubin's statement to Scalzo is hearsay, it is considered in this case not for the truth of the matter asserted but rather for its effect on Plaintiff and a reasonable woman in her position.

Plaintiff has adduced evidence of harassment including: 1) Lubin repeatedly telling the "breasting" story to her or in her presence; 2) Lubin repeatedly commenting on his wife's breasts in Plaintiff's presence; 3) one instance where Lubin discussed oral sex in Plaintiff's presence; 4) a period when Lubin directed a web camera at Plaintiff's workstation; and 5) Lubin repeatedly making comments outside Plaintiff's presence that referred to her sex discrimination complaint and cast her as a liar, which caused her to be shunned by other employees.[3] Viewing the facts in the light most favorable to Plaintiff, all of these incidents could be seen as motivated by Plaintiff's gender.[4] There is no dispute that Plaintiff subjectively perceived this work environment to be abusive. Indeed, she stated that the harassment left her "disgusted, angry, and frustrated." (Dkt. No. 47-1, p. 4). And the Court finds that Plaintiff has raised an issue of fact as to whether the harassment was severe and/or pervasive enough that a reasonable person would find it to be hostile or abusive. *See Redd v. New York Div. of Parole*, 678 F.3d 166, 182 (2d Cir. 2012) (finding that questions of fact existed as to supervisor's conduct and motivation and the effect of the conduct on a reasonable person in the plaintiff's position, which would have to be resolved by a jury for purposes of the plaintiff's hostile work environment claim); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001) (recognizing that the line between "boorish and inappropriate" behavior and actionable sexual harassment can be indistinct, and such "haziness counsels against summary judgment").

---

[3] The Second Circuit has held that "remarks made outside a plaintiff's presence can be relevant to a hostile work environment claim." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 190 (2d Cir. 2001).

[4] The Court notes that "[f]acially neutral incidents may be included . . . among the totality of the circumstances that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002) (internal quotation and citation omitted). Here, Lubin's later comments did not directly reference Plaintiff's gender, but they are sufficiently intertwined with her sexual harassment complaint against Lubin to permit a reasonable fact-finder to conclude that the comments were based on gender.

### b.   Imputation to Defendant

Next, Defendant argues that any hostile work environment cannot be imputed to Defendant because Plaintiff "is unable to establish that Defendant did not offer her a reasonable avenue for complaint, or that Defendant knew about the alleged harassment and did nothing about it." (Dkt. No. 44-9, p. 14).  In response, Plaintiff contends that "there is more than sufficient evidence for a jury to conclude that ITS failed to take appropriate measures to prevent the harassment." (Dkt. No. 47-21, p. 23).

The record shows that Plaintiff first formally complained to ITS about Lubin on February 27, 2017.  (Dkt. No. 44-2, pp. 47–51).  And while ITS quickly opened an investigation and began interviews, Lubin remained Plaintiff's supervisor, even though Plaintiff requested to be transferred out of the unit.  (*Id.*, p. 54).  On or about April 7, 2017, ITS concluded its investigation and removed Lubin from Plaintiff's workplace and chain of command.  (Dkt. No. 44-8, ¶¶ 28–32).  But in the interim, Plaintiff states that Lubin had started pointing a web camera at her desk.  (Dkt. No. 47-1, p. 6).  Further, the record shows that ITS agreed to a settlement with Lubin regarding Plaintiff's complaint, without any admission of guilt or finding of wrongdoing.  (Dkt. No. 44-2, pp. 124–27).  Although Lubin was required to forfeit 10 days of accrued time, Plaintiff argues that the settlement could be seen as a "slap on the wrist" that failed to deter future harassment.  (Dkt. No. 47-21, p. 24).  And Plaintiff has adduced evidence that Lubin continued to disparage her to other employees, claiming that he had been vindicated and calling her a liar.  (Dkt. No. 47-13, p. 7).

Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could conclude that ITS failed to promptly and effectively respond to Plaintiff's complaints to prevent continuing harassment and remediate the hostile work environment.  Accordingly, Defendant is

not entitled to summary judgment on Plaintiff's Title VII hostile work environment claim.[5] However, Plaintiff has not cleared the higher bar for potentially imputing liability to ITS under the NYSHRL because there is no evidence that ITS encouraged or approved of Lubin's conduct. Though the efficacy of its response is open to debate, the record shows that ITS at least attempted to address Lubin's conduct and remedy the hostile work environment, and these facts preclude liability on Plaintiff's NYSHRL hostile work environment claim. Therefore, this claim must be dismissed.[6]

### B.   Retaliation

#### 1.   Applicable Law

Retaliation claims under Title VII and the NYSHRL are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of retaliation, a plaintiff must show that: 1) she engaged in a protected activity; 2) her employer was aware of the activity; 3) the employer took adverse employment action against her; and 4) a causal connection exists between the alleged adverse action and the protected activity. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001). If the employer demonstrates a

---

[5] *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000) ("[W]e have held that if harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate."); *see also Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998) ("[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate") *abrogated on other grounds by Burlington Indus., Inc.*.

[6] *See Durkin*, 678 F. Supp. 2d at 137 (dismissing the plaintiff's NYSHRL hostile work environment claim where there was "no evidence that Defendant encouraged or approved of the antagonists' conduct").

legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to show "that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

### 2.    Analysis

First, there is no dispute that ITS was aware that Plaintiff engaged in protected activity when she filed an internal complaint of discrimination on February 27, 2017.  Next, Plaintiff must show that ITS took an adverse action against her, meaning "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  Plaintiff claims that she suffered two adverse actions: 1) her non-assignment to a "high profile" work project; and 2) an allegedly retaliatory hostile work environment based on Lubin's behavior, including the web camera, the Klingon quote, and the comments to other employees claiming vindication and calling her a liar. (Dkt. No. 47-21, pp. 27–30).

However, courts have held that non-assignment to a volunteer position without any additional compensation, as was the case here, does not rise to the level of an adverse action to support a retaliation claim.  *See Cristofaro v. Lake Shore Cent. Sch. Dist.*, 473 F. App'x 28, 31 (2d Cir. 2012).  And the Court finds that the other incidents cited by Plaintiff would not dissuade a reasonable person from making a charge of discrimination either.  Even viewing the facts in Plaintiff's favor, Lubin's conduct and comments after Plaintiff's discrimination complaint, most of which were passive-aggressive and not personally directed at Plaintiff, are not severe or pervasive enough to constitute a hostile work environment that would stifle further complaints.  Indeed, these incidents did not dissuade Plaintiff from filing a later EEOC Charge on April 30, 2018.

In any event, Plaintiff has also failed to adduce evidence of but-for causation between Defendant's alleged retaliatory motive and the alleged adverse actions.[7]  The record shows that almost a year passed between Plaintiff's February 27, 2017 complaint and her non-assignment to the project on or about January 10, 2018—hardly evidence of temporal proximity.  Further, the ITS employee in charge of the project, Manohar Mathan, testified that he was unaware of Plaintiff's complaint against Lubin, (Dkt. No. 44-7, p. 20), and Plaintiff's claim to the contrary is nothing more than speculation.  Based on these facts, no reasonable jury could find that retaliation against Plaintiff was the but-for cause for her not receiving the desired assignment.  Finally, Plaintiff has failed to adduce evidence that retaliation was the but-for cause of the allegedly hostile work environment.  As discussed above, the incidents involving Lubin began before Plaintiff engaged in protected activity—and reflected a clear link to gender, which undermines a causal connection to retaliation.  And at this stage, Plaintiff cannot rely on a mixed-motives theory.  *See U. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Accordingly, Plaintiff's retaliation claim fails for these reasons as well.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 44) is **GRANTED in part and DENIED in part**; and it is further

---

[7] The Supreme Court has held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *U. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Courts have also adopted this standard for NYSHRL retaliation claims.  *See Saji v. Nassau U. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. 2018).  Some courts have applied the but-for standard at the prima facie stage and others at the pretext stage; in this case the Court finds that Plaintiff cannot satisfy the but-for standard at either stage.

**ORDERED** that the following claims are dismissed: 1) hostile work environment pursuant to the NYSHRL; and 2) retaliation pursuant to Title VII and the NYSHRL; and it is further

**ORDERED** that Defendant's motion is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's claim for hostile work environment pursuant to Title VII shall proceed to trial; and it is further

**ORDERED** that the Clerk of the Court is directed to provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Dated:  April 26, 2022
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge